The defendant, Delta Construction Corporation ("Delta"), appeals from the trial court's order denying its motion to compel arbitration of a dispute between it and the plaintiff, Stephen C. Gooden, d/b/a Gooden Heating and Air Conditioning Company.[1] We reverse and remand.
This action arose out of the construction of a 2-story, 40-bed personal care facility in Lee County. Delta, a Georgia corporation, served as the general contractor, agreeing to provide the necessary labor and materials for the project. Gooden, an Alabama resident and one of a number of subcontractors hired by Delta, performed heating, ventilation, and air conditioning work, pursuant to a written contract with Delta. The facility is owned by Plantation South of Auburn Partnership ("Plantation South"), an Alabama general partnership; the property is named Plantation South of Auburn. After a controversy arose as to whether he was entitled to an additional $32,000 under his contract with Delta, Gooden filed an action in the Lee County Circuit Court on May 7, 1996, naming both Delta and Plantation South as defendants and seeking damages based on allegations of breach of contract, negligence, and fraud.[2] Gooden alleged that Delta had "negligently supervised the coordination of subcontractors in the performance of [the] work" and that that negligence had caused him "to suffer many delays and [to] incur large amounts of overtime." Gooden further alleged that Delta had refused to compensate him for additional costs that he had incurred, compensation that, he says, he was promised and entitled to under the terms of his contract. Delta filed a counterclaim, based on allegations of breach of contract, specifically allegations that Gooden had performed substandard work and had not completed the job. Delta moved to compel Gooden to arbitrate his claims, pursuant to the following broad-form predispute arbitration provision contained in the contract between Delta and Gooden:
 "Any controversy or claim between the contractor and the subcontractor arising out of or related to this subcontract, or the breach thereof, shall be settled by arbitration, which shall be conducted in the same *Page 977 
manner and under the same procedure as provided in the prime contract with respect to claims between the owner and the contractor, except that a decision by the architect shall not be a condition precedent to arbitration. If the prime contract does not provide for arbitration or fails to specify the manner and procedure for arbitration, it shall be conducted in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect unless the parties mutually agree otherwise."
(Emphasis added.) The trial court denied Delta's motion by an order dated July 23, 1997, stating in pertinent part:
 "On May 16, 1997, the Court heard arguments of the parties regarding [Delta's] motion to compel arbitration. After the hearing, the parties submitted briefs and supporting exhibits. [Delta] is a foreign corporation, which has not procured a certificate of authority from the Secretary of State of Alabama. [Delta] argues that even though [it] is not qualified to do business in Alabama it should be allowed to enforce the arbitration clause contained in its contract with [Gooden]. The Court disagrees with this proposition. It is therefore ordered, adjudged and decreed that [Delta's] motion to compel arbitration is denied."[3]
Although several specific issues are presented, the basic question is whether the trial court erred in denying Delta's motion to compel arbitration. We conclude that it did.
Acknowledging that on its face Ala. Code 1975, § 8-1-41(3), prohibits the specific enforcement of a predispute arbitration agreement, Delta contends that its contract with Gooden "involves" interstate commerce and, therefore, that the Federal Arbitration Act, 9 U.S.C. § 1 et seq. ("FAA"), preempts state law so as to render the agreement enforceable. Gooden contends, among other things, that his contract with Delta does not involve interstate commerce and, therefore, that the FAA is inapplicable, and that, even if the FAA is applicable, arbitration is not mandated because, he says, Delta has failed to comply with Ala. Code 1975, § 10-2B-15.02(a) — commonly referred to as Alabama's "forum" or "door-closing" statute.[4]
Failure to comply *Page 978 
with § 10-2B-15.02(a), Gooden asserts, renders the arbitration provision unenforceable by Delta. In response to this latter argument, Delta acknowledges that § 10-2B-15.02(a) (1997 cum. supp.) currently provides:
 "A foreign corporation transacting business in this state without a certificate of authority or without complying with Sections 40-14-1 to 40-14-3, inclusive, 40-14-21, or 40-14-41, may not maintain a proceeding in this state without a certificate of authority [sic]. All contracts or agreements made or entered into in this state by foreign corporations prior to obtaining a certificate of authority to transact business in this state shall be held void at the action of the foreign corporation or any person claiming through or under the foreign corporation by virtue of the contract or agreement; but nothing in this section shall abrogate the equitable rule that he who seeks equity must do equity."
However, Delta points out that this particular provision was not in effect on April 10, 1995, when it entered into its contract with Gooden. Section 10-2A-247 was repealed by Ala. Acts 1994, Act No. 94-245, p. 457, § 3, effective January 1, 1995. Act No. 94-245 repealed Chapter 2A, relating to business corporations, and replaced that chapter with Chapter 2B. Portions of Chapter 2B were subsequently repealed, and the current provisions were added by Ala. Acts 1995, Act No. 95-663, p. 1374, § 3, effective August 1, 1995. The statute that was in effect when Delta and Gooden entered into their contract provided:
 "(a) A foreign corporation transacting business in this state without a certificate of authority or without complying with Sections 40-14-1
through 40-14-3, 40-14-21, or 40-14-41 may not maintain a proceeding in any court in this state until it obtains a certificate of authority, complies with Sections 40-14-1 through 40-14-3, Section 40-14-21 and Section 40-14-41, and discharges its liability under subsection (d) hereof.
". . . .
 "(d) A foreign corporation transacting business in this state without a certificate of authority shall be liable to this state, for the years or parts thereof during which it transacted business in this state without a certificate of authority, in an amount equal to treble the amount of all fees and taxes that would have been imposed upon such corporation had it duly applied for and received a certificate of authority to transact business in this state as required by this article and thereafter filed all required reports, plus all interest and penalties imposed for failure to pay such fees and taxes."
§ 10-2B-15.02, Ala. Code 1975 (1994 repl. vol.). Delta argues that it has now qualified to do business in Alabama and, therefore, that it can enforce the arbitration provision in its contract. Citing National American Ins. Co. v. Boh BrothersConstr. Co., 700 So.2d 1363 (Ala. 1997), Delta argues, in the alternative, that application of this forum-closing provision would violate the Commerce Clause of the United States Constitution because, it says, it was at all times relevant to this case engaged in interstate commerce.
It is well settled that the FAA preempts contrary state law (contrary law based on § 8-1-41(3) and public policy) and renders enforceable a predispute arbitration agreement contained in a contract that "involves" interstate commerce.Jim Burke Automotive, Inc. v. Beavers, 674 So.2d 1260
(Ala. 1995); Lopez v. Home Buyers Warranty Corp., 670 So.2d 35
(Ala. 1995). Recently, in Hurst v. Tony Moore Imports, Inc.,699 So.2d 1249 (Ala. 1997), four Justices, in a plurality decision, explained that United States Supreme Court precedent indicates that even an intrastate transaction "involves" interstate commerce if it has virtually any tangible effect on the generation of goods or services for interstate markets and their distribution to the consumer. 699 So.2d at 1255, 1257.[5] *Page 979 
It also appears to be settled that a construction contract supplying both material and labor, such as the one involved here between Delta and Plantation South, is an example of the kind of contract that is considered intrastate, even though some of the material and labor is procured from outside the state. See Building Maintenance Personnel, Inc. v.International Shipbuilding, Inc., 621 So.2d 1303 (Ala. 1993);Green Tree Acceptance, Inc. v. Blalock, 525 So.2d 1366, 1370
(Ala. 1988), and the cases cited therein; see, also, 15 Am.Jur.2d Commerce § 39 (1976); 36 Am.Jur.2d ForeignCorporations §§ 348-351 (1968); Annot., Construction Work ByForeign Corporation As Doing Business for Purposes of StatuteRequiring Foreign Corporation To Qualify As Condition of AccessTo Local Courts, 90 A.L.R.3d 937 (1979); Annot., WhatConstitutes Doing Business Within State for Purposes of State"Closed-Door" Statute Barring Unqualified or UnregisteredForeign Corporation from Local Courts — Modern Cases, 88 A.L.R.4th 466 (1991).
Delta's construction activities in the present case were significant and relatively lengthy, and they cannot be characterized as being in any way incidental to an interstate transaction. The record indicates that although Delta apparently does not maintain a permanent presence in Alabama, its construction of the Lee County facility took well over a year. During that time, Delta employees and subcontractors traveled to the construction site, transported a substantial amount of equipment and materials to the site, and maintained a trailer on the site for use as an on-site office. In addition, Delta hired a number of Alabama subcontractors for the job, and for at least part of the time the project was under construction Delta employed a project manager, who lived in Lee County during the construction. Delta also acquired an Alabama contractor's license, and it has now taken steps to qualify with the secretary of state to engage in the business of construction in Alabama. The United States Supreme Court held in Kansas City Structural Steel Co. v.Arkansas, 269 U.S. 148, 46 S.Ct. 59, 70 L.Ed. 204 (1925), that enforcement of the forum-closing statute in regard to lawsuits based on this kind of intrastate construction activity ordinarily does not run afoul of the federal constitution. Likewise, under facts not materially dissimilar to these, the United States Court of Appeals for the Eleventh Circuit held inS H Contractors, Inc. v. A.J. Taft Coal Co., 906 F.2d 1507
(11th Cir. 1990), cert. denied, 498 U.S. 1026, 111 S.Ct. 677,112 L.Ed.2d 669 (1991), that the operations of an unqualified foreign corporation (S H) engaging in the construction business in Alabama "were sufficiently localized in Alabama to allow Alabama courts to enforce the forum-closing statute against S H without offending the federal commerce clause." 906 F.2d at 1513. See, also, Arab African International Bank v.Epstein, 10 F.3d 168 (3d Cir. 1993). Although this Court did hold in National American Ins. Co. v. Boh Brothers Constr. Co., supra, that Alabama's forum-closing provisions do not apply to a foreign corporation engaged in interstate commerce in this state, that holding is inapposite here because of the intrastate nature of Delta's activities.
We conclude that Delta was not engaged in interstate commerce while it was fulfilling its construction contract with Plantation South and that the application of this state's forum-closing provision that was in effect when Delta and Gooden entered into their contract does not violate the Commerce Clause.
However, our review of the record persuades us that Delta's contract with Gooden did nonetheless "involve" or have an "effect" on interstate commerce, so as to invoke Congress's regulatory power under the Commerce Clause. Earl T. Schoepf, Delta's vice-president, specifically testified by affidavit as follows:
 "Delta Construction served as general contractor in the construction of the personal care facility. It entered into several dozen subcontracts and purchase orders for materials, equipment and supplies, more than half of which by number and *Page 980 
dollar volume were entered into with sources outside of the State of Alabama. Among the subcontractors located outside Alabama were: MV Concrete of Atlanta, Georgia, which placed site concrete; Gilbert Avalos, of Atlanta, who served as mason; Turner Associates of Dallas, Georgia, which functioned as plumbing subcontractor; Affordable Sprinkler Company of Duluth, Georgia, which installed fire protection systems and equipment; Bush Millworks Company of Atlanta, which furnished and installed exterior columns; Rollins Incorporated, of Atlanta, which furnished and installed fire alarm and nurse call systems; Canac Kitchens of Georgia, of Atlanta, which furnished and installed cabinetry; and Floors Unlimited, Incorporated, of Atlanta, which furnished and installed flooring. Among the suppliers which were located outside the State of Alabama and which sent materials to the job site from outside Alabama were: Shaw Industries of Dalton, Georgia, which furnished carpeting; Dover Cheek, Incorporated of Buford, Georgia, which furnished electrical light fixtures; Parsons-Andrews Company of Duluth, Georgia, which furnished doors; Ply Mart, Incorporated of Duluth, Georgia, which furnished windows and accessories; Atlantic Hardware Company of Atlanta, which furnished miscellaneous hardware; Sears, Roebuck and Company, a Delaware corporation, which from its Atlanta warehouse furnished refrigeration and microwave cooking equipment; Hospitality Supply Company of Atlanta, which furnished kitchen equipment; and Bache Architectural Products of Atlanta, which furnished access doors. Also, the project architect and interior designer, Gary B. Coursey Company, is from Atlanta, and visited the site on a weekly basis. In addition, with our own crews, who were brought from the Atlanta area, Delta Construction installed most hardware and trim work and built site amenities and a dumpster screen."
Although Gooden stated in an affidavit that Delta had hired a number of subcontractors from Alabama, Schoepf's affidavit testimony appears to be undisputed. Because the contract between Delta and Gooden involved or affected interstate commerce, the FAA applies.
However, we hasten to point out that, as Gooden asserts, the FAA did not abrogate all state law defenses to a contract containing an arbitration provision. Section 2 of the FAA provides that a "written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds asexist at law or in equity for the revocation of any contract." (Emphasis added.) In Allied-Bruce Terminix, the United States Supreme Court stated:
 "States may regulate contracts, including arbitration clauses, under general contract law principles and they may invalidate an arbitration clause 'upon such grounds as exist at law or in equity for the revocation of any contract.' . . What States may not do is decide that a contract is fair enough to enforce all its basic terms . . ., but not fair enough to enforce its arbitration clause. The [Federal Arbitration] Act makes any such state policy unlawful, for that kind of policy would place arbitration clauses on an unequal footing,' directly contrary to the Act's language and Congress' intent."
513 U.S. at 281, 115 S.Ct. at 843. (Emphasis added.)
The record indicates that Delta did obtain a certificate of authority on May 19, 1997, to do business in Alabama and that it also paid the necessary admission tax, permit fee, and franchise tax. The record does not establish, however, that Delta has fully complied with § 10-2B-15.02(a) and (d), which, together, require that a previously nonqualified foreign corporation, as a prerequisite to enforcing a contract in this state, pay to the state "an amount equal to treble the amount of all fees and taxes that would have been imposed upon such corporation had it duly applied for and received a certificate of authority to transact business in this state as required by [law]." This statutory requirement is clear on its face. *Page 981 
The effect of all this is that although the FAA preempts application of § 8-1-41(3), the FAA does not relieve Delta of the ramifications of its failure to comply with Alabama's corporate qualification provisions. Stated differently, Delta cannot invoke the aid of this state's courts to enforce the arbitration provision, because of its noncompliance with Alabama law. This does not end our inquiry, however, for even though Delta cannot seek assistance from an Alabama court in enforcing the contract, neither the trial court nor this Court can permit Gooden to arbitrarily pick and choose between provisions in the contract that he is suing on. Gooden is seeking to recover damages based on allegations that, among other things, Delta breached its contract. Gooden is, therefore, relying on his contract with Delta to support his claim for damages.
Recently, in Ex parte Dyess, 709 So.2d 447 (Ala. 1997), four Justices, in a plurality decision, held that as a general rule a person cannot merely pick and choose the provisions in a contract that he wants to apply. In that case, Dyess sought to recover under the uninsured motorist provisions of an insurance contract and at the same time sought to avoid the arbitration provision contained in the contract. The FAA was found to apply in that case because the contract involved interstate commerce. The opinion in Dyess noted that Dyess was attempting to arbitrarily pick and choose between the provisions in the contract that were advantageous to him and the one provision he thought was not — the arbitration provision. In the present case, Gooden is attempting to do what Dyess was not permitted to do — enforce that part of his contract that is advantageous to him, but not that part that he opposes, the arbitration provision.
That arbitration provision states that "[a]ny controversy or claim between the contractor and the subcontractor arising out of or related to this subcontract, or the breach thereof,shall be settled by arbitration." (Emphasis added.) If Gooden wants to recover compensation under the contract, he may certainly seek to do so; however, he has no choice but to pursue his claim under the terms of that contract — through arbitration rather than through litigation. Ex parte Dyess. For us to permit Gooden to arbitrarily cast aside the arbitration provision that he agreed to would amount to a policy decision by this Court that the contract is fair enough to enforce all of its basic terms relevant to compensation, but not fair enough to enforce its arbitration provision. Such a decision would clearly run afoul of the United States Supreme Court's holding in Allied-Bruce Terminix Cos. v. Dobson, supra.
For the foregoing reasons, the trial court's order denying Delta's motion to compel arbitration is reversed and the cause is remanded.
REVERSED AND REMANDED.
HOOPER, C.J., and MADDOX, SEE, and LYONS, JJ., concur.
COOK, J., concurs in the result.
ALMON, SHORES, and KENNEDY, JJ., dissent.
[1] An appeal is the proper procedure by which to challenge an interlocutory order denying a motion to compel arbitration. SeeAllied-Bruce Terminix Cos. v. Dobson, 684 So.2d 102, 104-05
(Ala. 1995); Long v. Industrial Development Board of the Town ofVincent, 619 So.2d 1387 (Ala. 1993); A.G. Edwards Sons, Inc.v. Clark, 558 So.2d 358 (Ala. 1990).
[2] Plantation South is not a party to this appeal.
[3] The record indicates that the trial court had earlier denied Delta's motion by an order dated July 19, 1997. However, by an order dated July 21, 1997, the trial court withdrew its July 19 order so that it could consider a supplemental memorandum of law Delta had filed on May 30, 1997. In that memorandum, Delta stated, among other things, that it "[had] attempted to and [was] continuing to attempt to qualify to do business and become registered as a foreign corporation in Alabama." In its motion filed on August 22, 1997, to vacate the July 23 order, Delta stated, among other things, "that [it had] in fact qualified to do business in the State of Alabama, having registered to do so with the Office of the Secretary of State of Alabama on May 19, 1997, and having met all qualifications of the Alabama Department of Revenue on July 15, 1997, as shown in Exhibits 'B' and 'C' hereto." Exhibit "B" is a certificate from the secretary of state, dated August 12, 1997, stating that Delta had qualified to do business in Alabama on May 19, 1997. Exhibit "C" is a notification from the Department of Revenue, dated July 15, 1997, stating that Delta had qualified effective May 19, 1997, and acknowledging receipt of Delta's payment of the statutorily required admission tax ($81.17), see Ala. Code 1975, § 40-14-1; permit fee ($20.00), see § 40-14-21; and franchise tax ($36.50), see § 40-14-41. The notification was stamped "Received July 17, 1997."
[4] We note Gooden's argument that his contract action is based on an alleged oral agreement with Delta — an agreement that Gooden says was not subject to an arbitration requirement. However, we can find nothing in the record to substantiate this argument. Gooden's contract with Delta provided in part:
 "The subcontractor may be ordered in writing by the contractor, without invalidating this subcontract, to make changes in the work within the general scope of this subcontract consisting of additions, deletions or other revisions, including those required by modifications to the prime contract issued subsequent to the execution of this agreement, the subcontract sum and the subcontract time being adjusted accordingly. The subcontractor, prior to the commencement of such changed or revised work, shall submit promptly to the contractor written copies of a claim for adjustment to the subcontract sum and subcontract time for such revised work in a manner consistent with requirements of the subcontract documents.
 "The subcontractor shall make claims promptly to the contractor for additional cost, extensions of time and damages for delays or other causes in accordance with the subcontract documents."
It is a dispute over a $32,000 "change order" that forms the basis of this case. In other words, Gooden's contract claim emanates from, and is based on, his written contract with Delta. As noted, that contract contains an arbitration provision.
[5] We note that, contrary to Gooden's assertion, the "contemplation of the parties" test that this Court adopted inEx parte Warren, 548 So.2d 157 (Ala. 1989), cert. denied, JimSkinner Ford, Inc. v. Warren, 493 U.S. 998, 110 S.Ct. 554,107 L.Ed.2d 550 (1989), is no longer the test to be applied in determining the applicability of the FAA. That test was expressly rejected by the United States Supreme Court inAllied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265,115 S.Ct. 834, 130 L.Ed.2d 753 (1995). See Hurst, at 1251.