Infiniti of Mobile, Inc. ("Infiniti"), and one of its sales representatives, Ron McCovey, appeal from the trial court's order denying their motion to compel arbitration of the fraud and breach-of-warranty claims filed against them by English Office and his wife, Mildred Office.[1] We reverse and remand. *Page 44 
The following facts are undisputed: English Office bought a motor vehicle from Infiniti on September 23, 1996. Mr. Office purchased the vehicle for his wife, using their joint funds. Mr. Office wrote a check on a joint account owned by him and his wife; the check, which was for the full purchase price, was made payable to "Infiniti of Mobile." During the preparation of the various sales documents, McCovey, in accordance with Infiniti's policy, filled in by hand the necessary sales information on a boilerplate "New Vehicle Retail Buyer's Order" form. The front of that form clearly identified Infiniti as the seller and Mr. Office as the buyer, and it contained pertinent information such as the description of the vehicle, the vehicle identification number, the price, etc. The signature of the Infiniti representative is illegible; however, the form appears to have been executed by McCovey. Mr. Office's signature appears in the bottom right corner of the front of the form; it appeals under the following provision, which is in bold type that is larger than much of the rest of the wording on the front page:
"Dispute Resolution Agreement
 "Buyer hereby acknowledges and agrees that all disputes and controversies of every kind and nature between buyer and Infiniti of Mobile, Inc., arising out of or in connection with the purchase of this vehicle will be resolved by arbitration in accordance with the procedure set forth on the reverse side of this Buyer's Order."[2]
The details of the arbitration agreement and procedure referred to on the front of the form were set out on the reverse side of the form above lines designated for filling in the "Vehicle Description," the "Vehicle Identification Number," the signature of the "Seller(s)/Lessor(s)," the signature of the "Buyer(s)/Lessee(s)," and the "Date." All of these lines were left blank.
After obtaining Mr. Office's signatures on the first retail-buyer's-order form, which he had filled out by hand, McCovey took that form to Mark Morgan, who was Infiniti's finance manager at the time of the sale. Morgan, again in accordance with Infiniti's policy, prepared another boilerplate, but this time computer-generated, "New Vehicle Retail Buyer's Order" form using the information contained on the first form. In fact, the information contained on both forms is identical. The second form was identical to the first one, with one exception. During the process of transferring the information from the handwritten form to the computer-generated form, Morgan mistakenly printed the information on a retail-buyer's-order form that identified the seller as "Jaguar of the Gulf Coast, Inc." Morgan explained the mistake in an affidavit that Infiniti submitted in support of its motion to vacate the trial court's order denying arbitration:
 "On or about September 23, 1996, English Office came to the premises of Infiniti of Mobile, Inc., and purchased a 1996 Infiniti Model I30, bearing VIN # JNKCA21DTT002574. During the process of purchasing said vehicle, English Office executed two `New Vehicle Retail Buyer's Orders.' [These retail buyer's orders were attached to the affidavit as Exhibits `A' and `B'.]"
 "Exhibit `A' [the first retail buyer's order] was executed by English Office and by Infiniti of Mobile, Inc. As is evident, the information on this document is handwritten. It is customary in the business for the salesmen to have a handwritten Buyer's Order prepared as soon as an agreement is reached between the dealership and a customer. The executed handwritten Buyer's Order is then submitted to either the Sales Manager or the Finance Manager, and the information on the handwritten form is input into a computer, and a typewritten Buyer's Order is printed and *Page 45 
the Buyer's Order is re-executed. Exhibit `B' is such a typewritten Buyer's Order. It was executed by me on behalf of Infiniti of Mobile, Inc., but on the wrong Buyer's Order. During the process of preparing the sales documents, I inadvertently obtained a Buyer's Order on which `Jaguar of the Gulf Coast, Inc.' was printed. This happened because, at the time of this transaction, Infiniti and Jaguar automobile paperwork was handled in the same office due to construction work at the dealership. At no time did I represent or intend to represent Jaguar of Mobile in this sale. Mr. Office made no indication of a belief to the contrary nor do I remember any objection to the arbitration agreement.
 "I am not aware of any situation in which a handwritten Buyer's Order would have been, or was, prepared and executed after a typewritten Buyer's Order was executed. Therefore, the Jaguar Buyer's Order, Exhibit `B,' would have been executed after the Infiniti Buyer's Order."
Apparently the Offices did not notice the mistake; however, there is no question that the Offices understood that Infiniti was the seller of the vehicle.[3] The trial court erred in denying Infiniti's motion to reform the second retail-buyer's-order form so as to identify Infiniti, rather than Jaguar of the Gulf Coast, Inc., as the seller.
Mr. Office placed his initials on the front of the second retail-buyer's-order form on the five lines that corresponded to the lines he had signed on the front of the first form, including the line in the bottom right corner under the bold-type provision entitled "Dispute Resolution Agreement." The reverse side of the second form, like the reverse side of the first form, set out the details of the arbitration agreement. The two lines on the reverse side of the second form designated for the "Vehicle Description" and "Vehicle Identification Number," like the corresponding two lines on the reverse side of the first form, were left blank. However, on the reverse side of the second form, Morgan signed on the line designated for the signature of the "Seller(s)/Lessor(s)"; Mr. Office placed his initials on the line designated for the signature of the "Buyer(s)/Lessee(s)"; and the date "9/23/96" was filled in. The front of the second form contained the following provision, which is included in a group of seven provisions dealing with such matters as property insurance, limitation of remedies, etc.:
"Statement Concerning Exclusivity of Agreement
 "This Buyer's Order includes all of the terms and conditions of the sale and cancels and supersedes any prior written or oral agreement. The Buyer's Order comprises the complete and exclusive statement of the terms of the agreement relating to the sale of the motor vehicle."
Mr. Office's signature appears two paragraphs below this provision, on a line apparently designated for the buyer to acknowledge consent to the seven provisions set out above it.
The trial court ruled that Infiniti's use of the "Jaguar of the Gulf Coast" dealer's form, in conjunction with Mr. Office's failure to sign the reverse side of the first handwritten retail-buyer's-order form, created an ambiguity *Page 46 
as to whether Mr. Office had agreed to the "Dispute Resolution Agreement," which appeared in both forms.
With respect to whether Mildred Office was obligated to arbitrate, the trial court stated:
 "The Court has previously held . . . that the actual signatory to the contract, English Office, is not required to submit his claim to binding arbitration. Obviously, a person even further removed from this contract, who never signed any of the documents, likewise, will not be compelled to submit her claims to arbitration. The Court is well aware of numerous cases, however, where non-signatories to a contract have been required, nevertheless, to submit their claims to arbitration. However, those cases which hold that arbitration provisions are enforceable against non-signatories to the arbitration agreement have [an] underlying theme in which it is clear that the parties agreed that all disputes, claims, or controversies [arising] from or relating to the contract or the relationships which resulted from the contract are to be submitted to arbitration. Obviously, if this Court is not satisfied that it was the intention of English Office and Infiniti to submit their disputes to binding arbitration, Mildred Office's claims likewise will not be required to be submitted to binding arbitration.
 "In addition to the rationale stated by the Court in the preceding paragraph, the Court is convinced that the rationale for denying arbitration [of the wife's claims] in [Ex parte Dickinson, 711 So.2d 984 (Ala. 1998)], also applies in this case. In Dickinson, the wife . . . had a much closer involvement with the overall sale of the automobile than . . . Mildred Office [had] in this case. In Dickinson, the husband and wife both negotiated for the purchase of the vehicle. In Dickinson, unlike this case, the wife actually signed the sales contract. Later when questions arose about financing and other matters, a second sales contract was signed, this time again by the wife. However, she never signed an arbitration clause and the Supreme Court refused to compel arbitration [of her claims]."
The Offices argue that the trial court properly denied Infiniti and McCovey's motion to compel arbitration. (We will sometimes hereinafter refer to the two defendants together as "Infiniti.")
Infiniti argues that the undisputed evidence indicates that English Office consented to arbitrate his claims. Infiniti also argues that the undisputed evidence indicates that Mildred Office was a third-party beneficiary of the sales agreement between it and Mr. Office and, therefore, that she cannot base her fraud and breach-of-warranty claims on that contract and at the same time pick and choose which of the provisions in that contract she will abide by.
After examining the record and the briefs, we conclude that both Mr. and Ms. Office are obligated to arbitrate their claims against Infiniti. The Federal Arbitration Act, 9 U.S.C. § 1
et seq. ("FAA"), does not make all arbitration provisions
appearing in whatever writing enforceable; rather, it makes arbitration agreements enforceable. According to the United States Supreme Court in First Options of Chicago, Inc. v. Kaplan,514 U.S. 938, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995), the question whether the parties agreed to arbitrate their disputes should be judged by ordinary state-law principles governing the formation of contracts. See Crown Pontiac, Inc. v. McCarrell,695 So.2d 615 (Ala. 1997). Merger clauses, such as the one appearing on the front of the second retail-buyer's-order form signed by Mr. Office, are enforceable under Alabama contract law. Although a merger clause does not bar the admission of parol evidence to prove fraud in the inducement of the contract, it is properly used to ensure that preliminary negotiations, whether oral or written, are either memorialized in the final contract or are not considered part of it. Crown, Pontiac, Inc. v. McCarrell, supra.
Mr. Office initialed the *ont of the second retail-buyer's-order form in five places; his initials appear on the line two paragraphs below the merger clause. The Offices do not argue, and we see no indication *Page 47 
in the record, that Mr. Office did not agree to the merger clause in the second form. We hold, therefore, that the merger clause in the second retail-buyer's-order form bars the consideration of any previous agreements of the parties and makes the second retail-buyer's-order form the final contract of the parties.Crown Pontiac, Inc. v. McCarrell, supra; see, also, Ex parteConference America, Inc., 713 So.2d 953 (Ala. 1998); Med CenterCars, Inc. v. Smith, 727 So.2d 9 (Ala. 1998). Because the undisputed evidence indicates that the second retail-buyer's-order forrn represents the final contract between Mr. Office and Infiniti, and because Mr. Office clearly initialed the arbitration provisions appearing on both the front side and the reverse side of that contract, we must conclude that Mr. Office agreed to arbitrate his claims against Infiniti. LawlerMobile Homes, Inc. v. Tarver, 492 So.2d 297, 304 (Ala. 1986) ("[t]he object of a signature is to show mutuality and assent"); same, Ex parte Pointer, 714 So.2d 971 (Ala. 1997); see alsoAnderson Brothers Chrysler Plymouth Dodge, Inc. v. Hadley,720 So.2d 895 (Ala. 1998).
The basis for Infiniti's motion to compel arbitration of Mr. Office's claims was the arbitration provision in the second retail-buyer's-order form; that form was signed only by Mr. Office. Therefore, the issue whether Ms. Office, a nonsignatory to the second retail-buyer's-order form, is bound by this arbitration provision is fundamentally different from the issues presented in other cases in which this Court has considered whether a nonsignatory could enforce an arbitration provision against; I signatory based on the "close relationship" test. See, e.g., Ex parte Isbell, 708 So.2d 571 (Ala. 1997), in which a nonsignatory was attempting to rely on an arbitration provision to compel a signatory of the contract to arbitrate the signatory's claims against the nonsignatory. See, also, MedCenter Cars, Inc., supra; Ex parte Napier, 723 So.2d 49 (Ala. 1998).
Here, a signatory, Infiniti, is attempting to compel a nonsignatory, Ms. Office, to arbitrate. The case relied on by the trial court in this present proceeding, Ex parte Dickinson,711 So.2d 984 (Ala. 1998) (four Justices concurring in the lead opinion; one Justice concurring in the result; four Justices dissenting on this point), held that one of the plaintiffs, Sandra Dickinson, a signatory (along with her husband, David) to an automobile "Retail Installment Sales Contract" that did not contain an arbitration provision, could not be compelled by the signatory to that contract (the defendant dealership) to arbitrate her contract and tort claims. David and Sandra Dickinson had both signed the "Retail Installment Sales Contract"; however, only David Dickinson had signed an accompanying "Retail Buyer's Order," which contained an arbitration provision. The Justices concurring in the lead opinion stated, 711 So.2d at 989:
 "Sandra Dickinson . . . never agreed to arbitrate anything. Yet [the defendant] seeks to compel her to arbitrate, and it seeks to compel her simply on the ground that [the defendant] and David Dickinson had agreed to arbitrate. That is not the law of contracts in this state."
The rule stated by the lead opinion in Dickinson was recently adopted by this Court in Tom Williams Motors v. Thompson,726 So.2d 607 (Ala. 1998), and is now the law. In Tom WilliamsMotors, a signatory (the defendant dealership) sought to compel the purchasers of a motor vehicle (father and daughter) to arbitrate their fraud claims under an arbitration provision included in a buyer's order. The vehicle was purchased for the daughter's use; the father participated in the transaction (he borrowed the money, wrote the check, and took title jointly with his daughter) because of the daughter's short term of employment and her lack of an established credit history. Whether the daughter (a signatory) was bound by the arbitration provision was not an issue before this Court. This Court held, however, that the father (a nonsignatory) was not.
In this present case, the trial court relied on Ex parteDickinson in denying Infiniti's motion to compel arbitration. In their arguments here, the Offices likewise rely on Dickinson. We conclude, however, that this present case is distinguishable from Dickinson in one important respect. In Dickinson, the *Page 48 
party sought to be bound by the arbitration provision, Sandra Dickinson, was a signatory to the "Retail Installment Sales Contract." Because arbitration agreements, not arbitrationprovisions, are specifically enforceable under the FAA, CrownPontiac, Inc. v. McCarrell, supra, the arbitration provision in the "Retail Buyer's Order" signed only by her husband was not enforceable against Sandra Dickinson. Therefore, Sandra Dickinson had every right to sue on the basis of her contract with the defendant dealership — a contract that contained no arbitration provision. She was not a third-party beneficiary of her husband's contract attempting to avoid the effect of the arbitration provision by merely picking and choosing the provisions in that contract that she wanted to apply. Likewise, in Tom WilliamsMotors, the nonsignatory (the father) sued on the basis of his status as a purchaser of the vehicle, although he had not agreed to the specific terms of the buyer's order. The father was not a third-party beneficiary attempting to pick and choose among the provisions in the buyer's order executed by his daughter and the dealer
The undisputed evidence demonstrates that Ms. Office was a nonsignatory to the final contract executed by Mr. Office and Infiniti. Unlike Sandra Dickinson in Dickinson and the father inTom Williams Motors, Ms. Office relies on her status as a third-party beneficiary under her husband's contract with Infiniti. Ms. Office absolutely concedes this in her affidavit. Under these circumstances, Ms. Office is in the position of basing her fraud and breach-of-warranty claims on the contract executed between her husband and Infiniti, while at the same time seeking arbitrarily to avoid the operation of a material provision in that contract solely on the basis that that provision requires the parties to the contract to arbitrate their claims. This she cannot do. See Delta Construction Corp.v. Gooden, 714 So.2d 975 (Ala. 1998); Ex parte Dyess,709 So.2d 447 (Ala. 1997); Ex parte Warren, 718 So.2d 45 n. 4 (Ala. 1998).
For the foregoing reasons, we conclude that the trial court's order denying Infiniti's motion to compel arbitration was clearly erroneous. See Ryan Warranty Services, Inc. v. Welch,694 So.2d 1271 (Ala. 1997) (applying a "clearly erroneous" standard of review where the trial court acts as the fact-finder with respect to the intent of the parties to arbitrate); see, also, AllstarHomes, Inc. v. Waters, 711 So.2d 924 (Ala. 1997) (recognizing that factual issues surrounding the parties' intent to arbitrate may be submitted to a jury for resolution). That order is, therefore, reversed and the case is remanded.
REVERSED AND REMANDED.
HOOPER, C.J., and COOK and LYONS, JJ., concur.
MADDOX and SEE, JJ., concur in the result.
SHORES and KENNEDY, JJ., dissent.
[1] We note that the Offices' fraud and breach-of-warranty claims are based on allegations that McCovey sold them a vehicle as "new," when, according to the Offices, he knew that it had previously been wrecked and that it had suffered substantial damage. The Offices do not allege fraud in the inducement with respect to the arbitration provision itself.
We also note that McCovey has standing to enforce the arbitration provision relied on by Infiniti. Ex parte Gray, 686 So.2d 250
(Ala. 1996).
[2] Mr. Office also signed his name in four other places on the front of the form, acknowledging various disclosures and provisions.
[3] Parol evidence was admissible to explain Morgan's mistaken use of the wrong form. Ala. Code 1975, § 8-1-2; Greene v.Hanover Ins. Co., 700 So.2d 1354 (Ala. 1997); HighlandsUnderwriters Ins. Co. v. Elegante Inns, Inc., 361 So.2d 1060,1063 (Ala. 1978) ("In general, a written instrument may be reformed so as to make it conform to the intention of the parties where, through mutual mistake, their intention is not so expressed."); Williamson v. United Farm Agency of Alabama, Inc.,401 So.2d 719, 762 (Ala. 1981) ("Under these circumstances [the existence of a fact question as to the meaning of an ambiguous contract] the trial judge properly admitted parol evidence relating to the parties' prior and subsequent negotiations in addition to their intent in executing the written contract.") Infiniti moved to have the second retail-buyer's-order form reformed, based primarily on the affidavit of Ms. Office, who acknowledged: "Our invoice for the purchase of this car, the application for title and the odometer statement . . . reflect that our transaction was with Infiniti of Mobile, Inc., and our check in payment for this car was drafted to Infiniti of Mobile, Inc." Therefore, when it denied Infiniti's motion to vacate the trial court's order, the trial court had before it clear and undisputed evidence indicating that the second retail-buyer's-order form was executed by Mr. Office and Infiniti. See McDonald v. U.S. Die Casting Development Co.,585 So.2d 853, 856 (Ala. 1991) (noting that a high degree of proof is required to reform a written instrument).