Rel: February 14, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of Southern Reporter. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in Southern Reporter.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2024-2025

_____

### SC-2024-0181

_____

**American Bankers Insurance Company of Florida**

**v.**

**Francine Pickett**

**Appeal from Wilcox Circuit Court**
**(CV-23-900034)**

WISE, Justice.

American Bankers Insurance Company of Florida ("American Bankers") appeals from the Wilcox Circuit Court's order denying its motion to compel arbitration and stay litigation.

Procedural History

On April 24, 2023, Francine Pickett sued American Bankers, American Modern Property and Casualty Insurance Company ("American Modern"), Davison Insurance Agency, L.L.C. ("Davison"), and various fictitiously named defendants in the trial court. In her complaint, Pickett alleged that, on or about May 16, 2022, she inquired with Davison about obtaining insurance on her mobile home in Pine Hill; that she was seeking to replace an existing policy she had with American Bankers; and that she informed Davison that she already had coverage through American Bankers and was looking for similar coverage with a lower premium. Pickett alleged that Davison instructed her to buy a policy from American Modern; that Davison quoted her a premium for a policy with American Modern; that Davison completed forms on her behalf; and that Davison had her sign the forms and pay the premium to obtain insurance from American Modern. She further alleged:

> "On or about May 26, 2022, after [Pickett] had been counselled by Defendant Davison Agency but before she obtained a new policy of insurance, Defendant American Bankers Insurance Company cancelled [Pickett's] former insurance policy for nonpayment. [Pickett] was unaware of this cancellation, and never received notice of this cancellation."

Pickett alleged that she had relied on Davison's help to purchase a policy with American Modern on June 29, 2022; that Davison had assured her

that the new policy had the same coverage as the previous policy with American Bankers; and that she had paid all premiums required under the American Modern policy. Pickett alleged that, in September 2022, her mobile home was damaged by a fire and was unlivable. She further alleged:

> "18. Defendant American Modern refuses to pay the claim based on the allegation that [Pickett] 'committed fraud' when she failed to disclose the fact that her previous policy had been cancelled. A fact of which she had been completely unaware, and which, if it had been disclosed would not have prevented American Modern from issuing the new policy.
>
> "19. Defendant American Modern and Fictitious Defendants have failed and/or refused to properly inspect, evaluate and/or pay claims according to the terms of the policy.
>
> "20. Defendants knowingly, intentionally, and with a total disregard for the truth of the matter conspired and colluded to not abide by the terms of the policy and properly apply the insurance coverage.
>
> "21. [Pickett] has complied with all terms of the policy of insurance.
>
> "22. [Pickett] has been damaged by the actions of the Defendants and Fictitious Defendants' refusal to properly inspect, evaluate and/or pay [Pickett's] insurance claim arising out of the covered peril fire."

In her complaint, Pickett alleged claims of bad faith-failure to pay and breach of contract based on American Modern's failure to pay for the

3

fire damage to her mobile home; alleged a claim of negligent and wanton procurement of insurance against Davison; and sought a judgment declaring that the insurance contract was valid and enforceable against American Modern. Pickett also alleged a civil-conspiracy claim in which she asserted: "Defendants unlawfully conspired to defraud and/or tortiously interfere with [Pickett's] contractual rights and conspired to perpetrate every cause of action asserted in this complaint." In Count IV, Pickett further alleged that "[t]he wrongful conduct of all Defendants and Fictitious Defendants combined and concurred to cause the damages to [Pickett] as stated herein above." Pickett also asserted a negligence claim in which she alleged that "Defendant American Bankers was negligent in its duty to warn of its policy cancellation."

On November 16, 2023, American Bankers filed a motion to compel arbitration and stay litigation. In its motion, American Bankers asserted that, on January 18, 2019, Pickett applied for homeowner's insurance with American Bankers for a Champion Avenger mobile home; that Pickett completed the application over the telephone with Home First Agency; that Pickett gave Home First the authority to sign the application on her behalf; that the application included a notice and

4

acknowledgment that the policy included an arbitration agreement; that Pickett authorized the Home First agent to sign the notice and acknowledgment on her behalf; and that, on that same date, Pickett paid her first premium payment. American Bankers asserted that Home First subsequently mailed the policy ("the 2019 policy") to Pickett's residence and that that policy included an arbitration agreement. American Bankers asserted that, on September 15, 2021, Home First issued a "Notice of Pending Cancellation" to Pickett based on the nonpayment of premiums; that Pickett telephoned Home First on September 27, 2021, to inquire about the amount owed to bring her account current; that a Home First representative gave her the amount she needed to pay; that Pickett asked if she could call back with the payment; that Pickett never called back and never paid the outstanding premiums due; and that the 2019 policy was subsequently canceled for nonpayment of premiums.

American Bankers asserted that, on February 2, 2022, 21st Mortgage Corporation emailed to Pickett a quote and an application for homeowner's insurance through a homeowner's policy with American Bankers; that Pickett signed the application and a notice and

acknowledgment that the policy included an arbitration agreement; that Pickett subsequently received a binder from 21st Mortgage ("the binder"); that Pickett never paid a premium to 21st Mortgage; that 21st Mortgage mailed a notice of cancellation to Pickett on May 16, 2022; and that Pickett's insurance was canceled effective May 16, 2022.

In support of its motion to compel, American Bankers attached an affidavit from Andy Bruner, the vice president of claims and compliance for Home First, and various documents regarding the 2019 policy, including a copy of the application, the notice and acknowledgment that the policy included an arbitration agreement, an arbitration agreement, and the notice of pending cancellation from Home First.

American Bankers also submitted an affidavit from Amanda Downey, the insurance director for 21st Mortgage. Attached to Downey's affidavit was a copy of the February 2022 insurance application, a copy of the notice and acknowledgment that the policy included an arbitration agreement, a copy of the binder, a copy of an arbitration agreement "that was included with Pickett's policy binder with [American Bankers] and referenced in her policy binder," and a copy of the notice of cancellation from 21st Mortgage.

The notice and acknowledgment that the policy included an arbitration agreement attached to Downey's affidavit included the following:

"IMPORTANT NOTICE ABOUT THE POLICY/CERTIFICATE OF INSURANCE FOR WHICH YOU HAVE APPLIED

"THIS DOCUMENT AFFECTS YOUR LEGAL RIGHTS

"READ THE FOLLOWING INFORMATION CAREFULLY.

"1.    THE POLICY/CERTIFICATE FOR WHICH YOU HAVE APPLIED INCLUDES A BINDING ARBITRATION AGREEMENT.

"2.    THE ARBITRATION AGREEMENT REQUIRES THAT ANY DISAGREEMENT RELATED TO THIS POLICY/CERTIFICATE MUST BE RESOLVED BY ARBITRATION AND NOT IN A COURT OF LAW.

"3.    THE RESULTS OF THE ARBITRATION ARE FINAL AND BINDING ON YOU AND THE INSURANCE COMPANY.

"4.    IN AN ARBITRATION, AN ARBITRATOR, WHO IS AN INDEPENDENT, NEUTRAL PARTY, GIVES A DECISION AFTER HEARING THE POSITIONS OF THE PARTIES.

"5.    WHEN YOU ACCEPT THIS POLICY/CERTIFICATE YOU AGREE TO RESOLVE ANY DISAGREEMENT RELATED TO THE POLICY/CERTIFICATE BY BINDING ARBITRATION INSTEAD OF A TRIAL IN COURT INCLUDING A TRIAL BY JURY.

"6.   ARBITRATION TAKES THE PLACE OF RESOLVING DISPUTES BY A JUDGE AND JURY AND THE DECISION OF THE ARBITRATOR CANNOT BE REVIEWED IN COURT BY A JUDGE AND JURY.

"ACKNOWLEDGMENT OF NOTICES

"I HAVE READ THIS STATEMENT.  I UNDERSTAND THAT I AM VOLUNTARILY SURRENDERING MY RIGHT TO HAVE ANY DISAGREEMENT BETWEEN THE INSURANCE COMPANY AND MYSELF RESOLVED IN COURT.  THIS MEANS I AM WAIVING MY RIGHT TO A TRIAL BY JURY.

"I UNDERSTAND THAT UPON RECEIPT OF THE POLICY/CERTIFICATE I SHOULD READ THE ARBITRATION CLAUSE CONTAINED IN THE POLICY/CERTIFICATE AND THAT I HAVE THE RIGHT TO REJECT THIS POLICY/CERTIFICATE WITHIN THREE (3) DAYS OF THE DATE OF DELIVERY IF I DO NOT WANT TO ACCEPT THE REQUIREMENT FOR ARBITRATION.

"I UNDERSTAND THAT THIS SAME TYPE OF INSURANCE MAY BE AVAILABLE THROUGH AN INSURANCE COMPANY THAT DOES NOT REQUIRE THE POLICY/CERTIFICATE RELATED DISAGREEMENTS BE RESOLVED BY BINDING ARBITRATION."

(Capitalization in original.)

The binder included the following notice at the top of the binder:

"THIS BINDER IS A TEMPORARY INSURANCE CONTRACT, SUBJECT TO THE CONDITIONS SHOWN ON PAGE 2 OF THIS FORM."

(Capitalization in original.) The "Conditions" section of the binder provided, in pertinent part:

> "This Company binds the kind(s) of insurance stipulated on page 1 of this form. <u>The Insurance is subject to the terms, conditions and limitations of the policy(ies) in current use by the Company.</u>"

(Emphasis added.) The arbitration agreement attached to Downey's affidavit provided, in pertinent part:

> "Any and all claims, disputes, or controversies of any nature whatsoever (whether in contract, tort or otherwise, including statutory, common law, fraud (whether by misrepresentation or by omission) or other intentional tort, property, or equitable claims) arising out of, relating to, or in connection with (1) this Policy or Certificate or any prior Policy or Certificate issued by Us to You, (2) [a]ny credit, loan or purchase transaction in connection with which this Policy or Certificate or any prior Policy or Certificate was issued by Us to You, or (3) the validity, scope, interpretation, or enforceability of this Provision or of the entire Policy or Certificate ('Claim'), shall be resolved by binding arbitration before a single arbitrator. All arbitrations shall be administered by the American Arbitration Association ('AAA') in accordance with its Expedited Procedures of the Commercial Arbitration Rules of the AAA in effect at the time the Claim is filed. The terms of this Provision shall control any inconsistency between the AAA's Rules and this Provision. You may obtain a copy of the AAA's Rules by calling (800) 778-7879. The cost of all arbitration proceeding[s] shall be paid by [Us], with the exception of the cost of representation of You. However, the arbitrator shall have the authority to order You to pay all costs of the arbitration proceedings if the arbitrator determines that the dispute is without substantial justification. The arbitrator shall apply relevant substantive

9

federal and state law and applicable statutes of limitations and shall provide written, reasoned findings of fact and conclusions of law. This Arbitration Provision is part of a transaction involving interstate commerce and shall be governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq. Arbitration proceedings shall commence within ninety (90) days after the first notification of one party by the other party … as to their election to arbitrate a dispute. Arbitration proceedings shall be conducted in the county where You reside, unless another location is mutually agreed upon in writing by You and [Us]. If any portion of this Arbitration Provision is deemed invalid or unenforceable, it shall not invalidate the remaining portions of the Arbitration Provision, except that in no event shall this Arbitration Provision be amended or construed to permit arbitration on behalf of a group or class. For the purpose of this Arbitration Provision, American Bankers Insurance Company of Florida shall be deemed to include all of its affiliates, successors and assigns, including but not limited to American Bankers Insurance Company of Florida, their respective principals, partners, officers and directors and all of the dealers, licensees, agents, and employees of any of the foregoing entities. This Arbitration Provision shall inure to the benefit of and be binding on You and each of the aforementioned persons and entities. This Provision shall continue in full force and effect subsequent to and notwithstanding the expiration of termination of this Policy or Certificate.

"No Class Actions/No Joinder of Parties: You agree that any arbitration proceeding will only consider Your Claims. Claims by, or on behalf of, other individuals will not be arbitrated in any proceeding that is considering Your Claims. You also agree that You will not join with others to bring Claims in the same arbitration proceeding unless all such persons are named on Your Policy or Certificate.

"YOU AND WE UNDERSTAND AND AGREE THAT BECAUSE OF THIS ARBITRATION PROVISION NEITHER YOU NOR WE WILL HAVE THE RIGHT TO GO TO COURT EXCEPT AS PROVIDED ABOVE OR TO HAVE A JURY TRIAL OR TO PARTICIPATE AS ANY MEMBER OF A CLASS OF CLAIMANTS PERTAINING TO ANY CLAIM."

(Capitalization in original.)

Pickett filed a response to the motion to compel. In her response, Pickett asserted that, in 2019, she "never signed an agreement to arbitrate any policy of insurance regarding her lost mobile home with Defendant American Bankers." She further asserted:

"2. Defendant American Bankers has alleged in its Motion to Compel Arbitration that there was never an insurance contract between the two parties in 2022, but merely a binder issued for insurance. The Defendant American Bankers is trying to argue two ways -- both alleging that there was an enforceable contract between the two parties and that there was not.

"3. [Pickett] denied having ever received an insurance policy in the mail or ever having received any actual notice of the terms of such alleged arbitration agreement or any arbitration clause in such policy.

"4. Defendant American Bankers has produced no evidence of any actual terms of any arbitration agreement signed by or provided to [Pickett] containing such agreement."

She subsequently filed a supplemental response to the motion to compel, in which she asserted:

11

"[Pickett] would like to show the Court that Exhibit B of [American Bankers'] motion to compel arbitration contains the following language

> "'I understand that upon receipt of the policy/certificate I should read the arbitration clause contained in the policy/certificate and that I have the right to reject this policy/certificate within three (3) days of the date of delivery. If I do not want to accept the requirement for arbitration.'

"There is no evidence before the court that [Pickett] was ever issued a policy/certificate of insurance containing an arbitration agreement. She was only issued a temporary insurance binder that did not contain an arbitration agreement. Therefore, the plaintiff, Francine Pickett, was never given an opportunity to 'read' or exercise her 'right to reject' the arbitration clause in the policy/certificate."

The trial court subsequently conducted a hearing on the motion to compel. After hearing arguments, the trial court gave the parties additional time to supplement their arguments. Pickett filed a second supplemental response to the motion to compel and attached her affidavit in support of that response. In her affidavit, Pickett stated, in pertinent part:

> "2. In February of 2022, I attempted to purchase mobile home insurance from American Bankers Insurance Company of Florida (American Bankers) for my mobile home.

12

"3.    Shortly thereafter I was emailed an insurance binder from American Bankers. Within the email I received was a document that read 'Important Notice About the Policy/Certificate of Insurance for Which You Have Applied.' Part of that document also contained the following: 'I understand that upon receipt of the policy/certificate I should read the arbitration clause contained in the policy/certificate and that I have the right to reject this policy/certificate within three (3) days of the date of delivery if I do not want to accept the requirement for arbitration.' (Exhibit A.)

"4    I have never received a copy of an insurance policy from American Bankers of Florida.

"5.    Due to never receiving an insurance policy from American Bankers, I was never able to read my policy, nor the arbitration clause that American Bankers of Florida said would be contained in the policy.

"6.    I was never able … to read the 'arbitration clause contained in the policy/certificate' and exercise my 'right to reject this policy/certificate within the (3) days of the date of delivery' as stated in document that was titled 'Important Notice About the Policy/Certificate of Insurance for Which You Have Applied.'"

Pickett later filed a third supplemental response to the motion to compel. In her third supplemental response, Pickett asserted that the 2019 policy was irrelevant to this case and that the denial of her claim by American Modern "was based solely on an alleged cancellation of a policy that [Pickett] applied for on February 2, 2022, with Defendant American Bankers Insurance Company of Florida." She again asserted that she did

13

not have the opportunity to reject or accept the 2022 American Bankers policy or the arbitration agreement as provided in the notice and acknowledgment she signed in 2022.

American Bankers subsequently filed a reply in support of its motion to compel. American Bankers asserted that the binder was a contract that calls for arbitration and that the binder evidences a transaction that affects interstate commerce. It asserted that a party does not have to sign an arbitration agreement to be bound by that agreement and that a party can manifest assent to an agreement by means other than a signature. It went on to assert:

> "Here, Pickett accepted the binder, never rejected it, and has now sued [American Bankers] for damages under it. [Doc. 2]; (Exhibit E, p. 13:10-11 (Pickett's counsel: '[s]he received a binder, and it referenced an arbitration')[)]. She ratified her acceptance of it with her claims against [American Bankers]. And so her signature is not required; her assent is evident. Id.; See also Philadelphia Am. Life Ins. Co. v. Bender, 893 So. 2d [1104,] 1109 [(Ala. 2004)]; Ex parte S. United Fire Ins., 843 So. 2d 151, 156 (Ala. 2002); S. Energy Homes, Inc. v. Ard, 772 So. 2d 1131, 1134-35 (Ala. 2000)."

American Bankers also asserted:

> "A party need not receive an arbitration agreement to be bound by it if the party has notice of it. [American Bankers Ins. Co. of Florida v. ]Tellis, 192 So. 3d [386,] 389-90 [(Ala. 2013)]. The Supreme Court of Alabama reasoned in American Bankers Ins. Co. of Florida v. Tellis that an insured is bound

14

by documents that are incorporated by reference in a policy. Id. If those incorporated documents are not provided to the insured, the insured still has a duty to investigate the terms of those documents. Id."

It asserted that, upon receiving the binder, Pickett had a duty to investigate the binder's terms and that the binder indicated that it was subject to the "terms, conditions and limitations of the policy(ies) in current use by" American Bankers. It also asserted that Pickett knew that the binder included an arbitration agreement based on the language in the notice and acknowledgment that she signed with her 2022 application. Finally, American Bankers asserted:

"The Supreme Court of Alabama expressed another reason in [American Bankers Insurance Co. of Florida v. ]Tellis[, 192 So. 3d 386 (Ala. 2013)] -- independent of the duty to investigate -- for why Pickett must arbitrate. Even when an insured claims to have 'never ... received the written policies containing the [arbitration] provisions,' an insured is still bound to arbitrate if the insured makes a claim against the insurer that relies on the policy. Tellis, 192 So. 3d at 391 (emphasis original) (citing [Philadelphia Am. Life Ins. Co. v. ]Bender, 893 So. 2d [1104,] 1109 [(Ala. 2004)] (reasoning that an insured is subject to an arbitration provision in an insurance policy if the insured relies on that policy to seek damages against the insurer even if the insured never received the policy) and citing Ex parte S. United Fire Ins., 843 So. 2d [151,] 156 [(Ala. 2002)] (same)). Pickett's claims against [American Bankers] seek damages that rely on the policy. ... The only wrong she alleges against [American Bankers] is that [American Bankers] failed to notify her before it cancelled her binder (and therefore her policy as a

15

whole). [Id.] That claim requires Pickett to rely on her binder as a valid contract. The binder's terms describe how it may be cancelled by [American Bankers]. [Doc. 21 Exhibit B-3]. And the Supreme Court of Alabama has held that when no other restrictive statute applies, the contract controls whether an insurer has properly cancelled a policy with an insured. Hartford Underwriters Ins. Co. v. Reed, 57 So. 3d 742, 748 (Ala. 2010) (citing Am. Interstate Ins. Co. v. Kelley, 797 So. 2d 479, 482 (Ala. Civ. App. 2000) ('... in the absence of a restrictive statutory provision, the parties to an insurance contract may specify the method by which it may be canceled and the parties are thereby bound. Put another way, an insurance policy may be canceled according to its terms.'). The only restrictive statute in Alabama related to policy cancellations applies to automobile insurance, not property insurance. See ALA. CODE § 27-23-20, et seq. So without the binder (and the policy, which the binder incorporates), Pickett cannot crave reference to the language needed support her claim.

"Pickett can't claim the binder and policy existed and seek damages against [American Bankers] relying on the policy while also claiming its [arbitration agreement] does not apply to her. Neither a signature nor receipt of the policy matters when the insured sues the insurer for damages that rely on the policy. Her suit against [American Bankers] validates the binder (and thus her policy too)."

On February 12, 2024, after conducting a hearing, the trial court entered the following order denying the motion to compel:

"1. The Court finds that there never was a policy of insurance delivered to the Plaintiff, Francine Pickett, therefore she also never received a copy of an arbitration agreement.

"2. Any possible insurance policies or arbitration agreements from previous transactions are not relevant to this matter.

16

"3. Due to no policy or arbitration agreement ever being delivered to the plaintiff in 2022, Francine Pickett, was never able to exercise her option, as set out in defendant American Bankers of Florida's application, to inspect the policy and arbitration agreement in the first three days of delivery and determine whether she wanted to keep the policy or purchase a policy from another carrier.

"4. Therefore, American Bankers of Florida's motion to compel is moot.

"5. The parties are Ordered to proceed with discovery."

After American Modern filed a motion for clarification, the trial court subsequently entered the following order:

"The Court hereby revises its Order of February 2, 2024 … to read as follows:

"1. The Court finds that [Pickett] has provided sufficient proof to rebut the evidence and arguments in the defendant American Bankers Insurance Company's Motion to Compel Arbitration.

"2. Any prior insurance policies or arbitration agreements from previous transactions are not sufficient to compel arbitration of this matter.

"3. Due to the Court's finding that no policy containing an arbitration agreement was ever provided to [her, Pickett] was unable to exercise her option, as set out in defendant American Bankers Insurance Company's application, to inspect the policy and arbitration agreement in the first three days of delivery and determine whether she wanted to keep the policy or purchase a policy from another carrier.

17

"4. Therefore, American Bankers Insurance Company's Motion to Compel is moot.

"5. The parties are Ordered to proceed with discovery."

This appeal followed.  See Rule 4(d), Ala. R. App. P.

Discussion

American Bankers argues that the trial court erroneously denied its motion to compel.

> " ' " This Court reviews de novo the denial of a motion to compel arbitration.  Parkway Dodge, Inc. v. Yarbrough, 779 So. 2d 1205 (Ala. 2000).  A motion to compel arbitration is analogous to a motion for a summary judgment.  TranSouth Fin. Corp. v. Bell, 739 So. 2d 1110, 1114 (Ala. 1999).  The party seeking to compel arbitration has the burden of proving the existence of a contract calling for arbitration and proving that the contract evidences a transaction affecting interstate commerce.  Id.  '[A]fter a motion to compel arbitration has been made and supported, the burden is on the non-movant to present evidence that the supposed arbitration agreement is not valid or does not apply to the dispute in question.' Jim Burke Automotive, Inc. v. Beavers, 674 So. 2d 1260, 1265 n.1 (Ala. 1995)(opinion on application for rehearing)." '
>
> "Elizabeth Homes, L.L.C. v. Gantt, 882 So 2d 313, 315 (Ala. 2003) (quoting Fleetwood Enters., Inc. v. Bruno, 784 So. 2d 277, 280 (Ala. 2000))."

Hoover Gen. Contractors-Homewood, Inc. v. Key, 201 So. 3d 550, 552 (Ala. 2016).

American Bankers argues that it satisfied its burden in this case because, it says, the binder is a contract that calls for arbitration and because the binder evidences a transaction that affects interstate commerce. Section 27-14-18(a), Ala. Code 1975, provides:

> "Binders or other contracts for temporary insurance may be made orally or in writing and shall be deemed to include all the usual terms of the policy as to which the binder was given, together with such applicable endorsements as are designated in the binder, except as superseded by the clear and express terms of the binder."

In this case, the binder specifically stated that it is a "temporary insurance contract, subject to the conditions shown on page 2 of this form." The "Conditions" section of the binder specifically provided that "[t]his insurance is subject to the terms, conditions and limitations of the policy(ies) in current use by the Company." It is undisputed that American Bankers' insurance policies include an arbitration agreement. Additionally, it is undisputed that, when Pickett applied for insurance in February 2022, she executed the notice and acknowledgment that specifically stated that the policy for which she had applied "includes a binding arbitration agreement." Thus, American Bankers satisfied its

burden of establishing the existence of an agreement calling for arbitration. Additionally, Pickett does not dispute that the binder evidences a transaction that affects interstate commerce. Thus, the burden shifted to Pickett to present evidence demonstrating that the arbitration agreement is not valid or does not apply to the dispute in question.

In the trial court and on appeal, Pickett has argued that she cannot be bound by the arbitration agreement because she never received the permanent insurance policy and did not have an opportunity to accept or reject the arbitration agreement as provided in the notice and acknowledgment. Pickett also argues that she did nothing to manifest her assent to the terms of the arbitration agreement and that she "never paid a premium for the purported policy, never renewed the policy, and never filed a claim with" American Bankers. Pickett's brief, p. 29.

However,

"it is well settled that

"'[a] plaintiff cannot seek the benefits of a contract but at the same time avoid the arbitration provision in the contract. Wolff Motor Co. [v. White], 869 So. 2d [1129,] 1136 [(Ala. 2003)]. Instead, "she must accept or reject the entire contract." Credit Sales, Inc. v. Crimm, 815 So. 2d

20

540, 546 (Ala. 2001). Britta's claims, including her breach-of-contract claim, rely on the contract to support her claims for damages. Therefore, she is bound by the arbitration provision in the contract. Infiniti of Mobile, Inc. v. Office, 727 So. 2d 42, 48 (Ala. 1999);[1] Delta Constr. Corp. v. Gooden, 714 So. 2d 975, 981 (Ala. 1998).'

"Bowen v. Security Pest Control, Inc., 879 So. 2d 1139, 1143 (Ala. 2003) (emphasis added). See also Southern Energy Homes, Inc. v. Ard, 772 So. 2d 1131, 1134-35 (Ala. 2000) ('A plaintiff cannot simultaneously claim the benefits of a contract and repudiate its burdens and conditions.' (citing Value Auto Credit, Inc. v. Talley, 727 So. 2d 61 (Ala. 1999); Infiniti of Mobile, Inc. v. Office, 727 So. 2d 42 (Ala. 1999); Georgia Power Co. v. Partin, 727 So. 2d 2 (Ala. 1998); Delta Constr. Corp. v. Gooden, 714 So. 2d 975 (Ala. 1998); and Ex parte Dyess, 709 So. 2d 447 (Ala. 1997))).

"_____

"[1]Notably, in Infiniti of Mobile, Inc., a plurality of this Court concluded that, '[b]ecause the undisputed evidence indicates that the second retail-buyer's-order form represents the final contract between Mr. Office and Infiniti, and because Mr. Office clearly initialed the arbitration provisions appearing on both the front side and the reverse side of that contract, we must conclude that Mr. Office agreed to arbitrate his claims against Infiniti.' 727 So. 2d at 47 …."

America's Home Place, Inc. v. Rampey, 166 So. 3d 655, 660-61 (Ala. 2014).

American Bankers asserts that "Pickett cannot claim the binder and policy existed and seek damages against [American Bankers] relying

on them while also claiming that the [arbitration agreement] does not apply to her." American Bankers' brief, p. 38. In her brief to this Court, Pickett asserts that she "has not sued [American Bankers] for damages under its policy, she is suing [American Bankers] for interfering with her policy claim with American Modern, by making misrepresentations that have delayed the processing of her claim." Pickett's brief, pp. 29-30. She points out the fact that she did not include American Bankers in her breach-of-contract claim against American Modern.

In her complaint, Pickett included a civil-conspiracy claim in which she alleged: "Defendants unlawfully conspired to defraud and/or tortiously interfere with [Pickett's] contractual rights and conspired to perpetrate every cause of action asserted in this complaint." However, Pickett also asserted a negligence claim against American Bankers in which she alleged that "American Bankers was negligent in its duty to warn of its policy cancellation." "'The elements of a negligence claim are a duty, a breach of that duty, causation, and damage.' Armstrong Bus. Servs., Inc. v. AmSouth Bank, 817 So. 2d 665, 679 (Ala. 2001)." Prill v. Marrone, 23 So. 3d 1, 6 (Ala. 2009). Any duty American Bankers owed Pickett with regard to the cancellation of the binder would arise from the

22

binder itself. In fact, the binder provided, in pertinent part: "This binder may be cancelled by the Company by notice to the insured in accordance with the policy conditions." Thus, Pickett's claims against American Bankers arise from and rely on the binder. Accordingly, Pickett cannot claim the benefits of the binder while also repudiating its terms and conditions. Therefore, the trial court erred when it denied American Bankers' motion to compel.[1]

## Conclusion

For the above-stated reasons, we reverse the trial court's order denying American Bankers' motion to compel. Accordingly, we remand this case to the trial court for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

Stewart, C.J., and Sellers, Mitchell, and McCool, JJ., concur.

---

[1]Based on our holding as to this issue, we pretermit discussion of the remaining arguments presented in the briefs.