726 So.2d 607 (1998)
TOM WILLIAMS MOTORS, INC., d/b/a Tom Williams BMW-Porsche-Audi
v.
Larry THOMPSON.
1970348.
Supreme Court of Alabama.
September 25, 1998.
Rehearing Denied December 4, 1998.
James A. Kee, Jr., Larry S. Logsdon, and Michael L. Jackson, of Wallace, Jordan, Ratliff & Brandt, L.L.C., Birmingham, for appellant.
Clay Hornsby of Morris, Haynes, Ingram & Hornsby, Alexander City, for appellee.
COOK, Justice.
AFFIRMED. NO OPINION.
See Rule 53(a)(1) and (a)(2)(F), Ala. R.App. P., and Ex parte Dickinson, 711 So.2d 984 (Ala.1998.)
ALMON, SHORES, and KENNEDY, JJ., concur.
HOUSTON, J., concurs specially.
LYONS, J., concurs in the result.
HOOPER, C.J., and MADDOX and SEE, JJ., dissent.
HOUSTON, Justice (concurring specially).
I write specially to explain why I have changed from the opinion I expressed when I dissented in Ex parte Dickinson, 711 So.2d 984 (Ala.1998).
Dickinson is now the law, and I am not too sure that I was right in dissenting in Dickinson. Here, as in Dickinson, a signatory to an arbitration agreement is trying to compel a nonsignatory to arbitrate. I agree that a signatory should be estopped from avoiding arbitration with a nonsignatory, when the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement the signatory party has signed. McBro Planning & Dev. Co. v. Triangle Elect. Constr. Co., 741 F.2d 342 (11th Cir.1984); Thomson-CSF, S.A. v. American Arbitration Ass'n, 64 F.3d 773 (2d Cir.1995). I am not now convinced that a nonsignatory should be so estopped.
LYONS, Justice (concurring in the result).
Two joint purchasers claim damages because, they say, they were fraudulently induced *608 into entering into a transaction that is undisputedly evidenced, at least in part, by a written instrument (the "buyer's order") containing an arbitration clause signed by one of the two purchasers. The claims of the nonsignatory plaintiff, Larry Thompson, are grounded in tort only. In his effort to avoid arbitration, Larry Thompson says he suffered no loss by entering into the buyer's order.
Where the plaintiff disavows his status as a party to a contract in an effort to avoid arbitration, the court does not err in requiring the plaintiff to arbitrate the abandoned claim of fraud in the inducement. Ex parte Warren, 718 So.2d 45 (Ala.1998). Here, the nonsignatory plaintiff maintains that he has actionable claims for fraud in the inducement arising from contractual relations independent of the buyer's order containing the arbitration clause that he did not sign and from which he claims no loss. I am unwilling to force Larry Thompson into arbitration on a theory of intertwining of contracts containing arbitration clauses and contracts without arbitration clauses[1] where he did not sign any contract with an arbitration clause and where, by conceding that he has suffered no loss by entering into the buyer's order, he has cut the twine that might otherwise bind the agreements together. It will be for the trial court, on remand, to determine whether he has a viable cause of action independent of the buyer's order.
MADDOX, Justice (dissenting).
This arbitration case arises out of Larry Thompson and Joana Thompson's purchase of an automobile from Tom Williams Motors, Inc., d/b/a Tom Williams BMW-Porsche-Audi ("Tom Williams"). The Thompsons sued Tom Williams, alleging that Tom Williams had committed fraudulent misrepresentation of material facts, suppression of material facts, deceit, and fraudulent deceit in connection with the sale of the automobile. Tom Williams moved to stay the proceeding and to compel arbitration. The trial court compelled arbitration as to Joana's claims, but refused to compel arbitration of Larry's claims, on the grounds that Larry did not sign the buyer's order that contained the arbitration clause. Tom Williams appeals the trial court's order denying arbitration of Larry's claims; Joana has not appealed the trial court's order compelling arbitration of her claims. The Court affirms. I must respectfully disagree, as I did in Ex parte Dickinson, 711 So.2d 984, 991 (Ala.1998), a case involving similar facts, on the ground that Larry's tort claims are "intimately founded in and intertwined with the underlying contract obligations." Further, I would hold that, based on the facts of this case, each of Larry's claims constitutes "a controversy thereafter arising out of such contract or transaction," within the meaning of those words in the Federal Arbitration Act. 9 U.S.C. § 2. There is no reason why one of the claims should be arbitrated and the other should proceed to trial.
In September 1996, Larry and his daughter Joana visited Tom Williams to purchase an automobile for Joana. Ultimately, they purchased a 1993 BMW 325is automobile, with Larry writing a check, using funds he had borrowed. Title was issued jointly in the names of "Thompson Larry R[.] or Joana."
As part of the purchase agreement, a buyer's order form was prepared. The buyer's order listed both Larry Thompson and Joana Thompson as purchasers and contained an arbitration clause providing that "[b]uyer/lessor and dealer agree that all claims, demands, disputes, or controversies of every kind or nature that may arise between them concerning any of the negotiations leading to the sale or lease of the vehicle, terms and provisions of the sale or lease agreement ... or any other aspects of the vehicle and its sale or lease shall be settled by binding *609 arbitration." Joana Thompson signed the buyer's order; Larry Thompson did not.
In May 1997, both Larry and Joana filed this action, alleging, among other things, that Tom Williams had misrepresented, suppressed, and concealed material facts about the automobile the Thompsons purchased from Tom Williams and that they had agreed to purchase the automobile as a result of the alleged misrepresentation, suppression, and concealment. Tom Williams moved in July 1997 to compel arbitration. After a hearing, the trial court granted Tom Williams's motion to compel arbitration as to Joana's claims, but denied the motion to compel arbitration as to Larry's claims.
Tom Williams argues that Larry's claims are subject to the arbitration agreement signed by Joana because, it says, his claims are based on the same documents and transaction as Joana's claims. Larry's sole argument is that he cannot be compelled to arbitrate his claims because he did not sign the arbitration agreement that appeared in the buyer's order.
The Federal Arbitration Act provides, in pertinent part:
"A written provision in any ... contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."
9 U.S.C. § 2. In addition to showing that the agreement in question appears in a contract involving interstate commerce, a party seeking a stay of proceedings pending arbitration must show: (1) that a valid written arbitration agreement exists; (2) that the issues in the action are referable to arbitration under the agreement; and (3) that the party is not in default in seeking arbitration. See 9 U.S.C. §§ 2-3; Allied-Bruce Terminix Companies, Inc. v. Dobson, 513 U.S. 265, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995).
It is undisputed that the contract in this case evidences "a transaction involving [interstate] commerce"; this claim, therefore, is governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq. It is also undisputed that Tom Williams is not in default in seeking arbitration. In addition, for purposes of this appeal, it is undisputed that the arbitration agreement itself was valid with regard to Joana's claims and that the fraud claims being asserted are encompassed by the arbitration clause. Therefore, the critical question presented is whether Larry, who did not sign the buyer's order containing the arbitration agreement, is nevertheless bound by the terms of that arbitration agreement.
The United States Supreme Court has recognized a strong federal policy in favor of arbitration, and, therefore, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). Pursuant to this policy, as I have written before:
"Several federal courts have ... held, based upon the theory of estoppel, that `[a] signatory was bound to arbitrate with a nonsignatory at the nonsignatory's insistence because of "the close relationship between the entities involved, as well as the relationship of the alleged wrongs to the nonsignatory's obligations and duties in the contract ... and [the fact that] the claims were `intimately founded in and intertwined with the underlying contract obligations.'"' Thomson-CSF, S.A. v. American Arbitration Association, 64 F.3d 773, 779 (2d Cir.1995); see also Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc., 10 F.3d 753, 757 (11th Cir.1993), cert. denied, 513 U.S. 869, 115 S.Ct. 190, 130 L.Ed.2d 123 (1994); McBro Planning & Dev. Co. v. Triangle Elec. Constr. Co., 741 F.2d 342, 344 (11th Cir.1984); J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A., 863 F.2d 315, 320-21 (4th Cir.1988)."
Ex parte Jones, 686 So.2d 1166, 1169-70 (Ala.1996) (Maddox, J., dissenting). Under the equitable estoppel theory discussed in the cases I cited in Ex parte Jones, claims involving a nonsignatory are subject to arbitration if the nonsignatory directly benefited from the contract containing the arbitration clause or if the nonsignatory's claims are *610 "intimately founded in and intertwined with the underlying contract obligations." McBro Planning & Dev. Co. v. Triangle Elec. Constr. Co., 741 F.2d 342, 344 (11th Cir.1984).
Applying this "close relationship" test to the facts of this case, I find it clear that Larry's claims are not distinct from Joana's claims, because both assert claims directly based on the sale of the automobile and on negotiations leading to that sale. It is clear from the record that Larry and Joana allege that they agreed to purchase the automobile from Tom Williams as a result of misrepresentations made by Tom Williams about the automobile. Implicit in this allegation is a recognition that both Larry and Joana were "purchasers" of the automobile. In fact, without Larry's involvement in the purchase transaction arising from the buyer's order containing the arbitration clause, he would not have standing to bring a claim against Tom Williams. Cf. A.L. Williams & Associates, Inc. v. McMahon, 697 F.Supp. 488 (N.D.Ga.1988). In the A.L. Williams case, an insurance agent's wife sued her husband's employer, based on contractual agreements that had been signed only by her husband and his employer. The wife asserted that the arbitration clauses in the contracts on which her claims were based did not apply to her because she had not signed the contracts. Id. at 493-94. The United States district court rejected this argument, stating:
"[The wife] alleges no entitlement to damages distinct from those allegedly suffered by her husband.... [A] party cannot have it both ways; it cannot rely on the contract when it works to its advantage and then [repudiate] it when it works to its disadvantage. Therefore, in this case, this Court will not allow [the wife] to assert claims allegedly arising out of the agreements executed by her husband without requiring her also to abide by the arbitration clauses in those agreements."
Id. at 494. Accord Foster v. Sears, Roebuck & Co., 837 F.Supp. 1006 (W.D.Mo.1993) (holding that a nonsignatory husband was bound to arbitrate claims arising out of purchase documents signed by wife). In this case, the trial court has not ruled on the standing issue, and the mandamus petition to this Court does not seek relief (i.e., dismissal) based on a question of standing. Instead, this matter concerns the arbitrability of the father's claims, and the arbitrator is fully capable of determining the standing of the father to bring those claims.
There could be no clearer case for the application of the doctrine of equitable estoppel than this one. It is undisputed that both Larry and Joana played an active role in the purchase of this automobile. Both Larry and Joana are listed as purchasers of the automobile on the buyer's order form containing the arbitration clause, and the title was issued jointly to Larry and Joana. Larry obtained the financing necessary to purchase the automobile and actually wrote the check paying for it. These facts clearly show that Larry's claims are so "intimately founded in and intertwined with the underlying contract obligations" as to make him subject to the arbitration agreement contained in the buyer's order. See McBro, 741 F.2d at 344; Sunkist, 10 F.3d at 757.
I realize that this Court, in Dickinson, supra, held, in part, that a nonsignatory wife was not required to arbitrate her claims, even though she had jointly purchased an automobile with her husband, who had signed an arbitration agreement as part of the automobile purchase transaction. I dissented in that case, and the reasons for my dissent were essentially the same as those I express here.
In Dickinson, the Court relied on Thomson-CSF, 64 F.3d at 776, to prevent a signatory party from invoking the estoppel rule to require a nonsignatory to arbitrate her claims. In that case, Thomson-CSF, S.A. ("Thomson"), purchased a subsidiary corporation after the subsidiary had entered into a supply agreement requiring it to purchase certain items from a certain supplier. The supplier later filed claims against the subsidiary and successfully sought to require the subsidiary to arbitrate those claims pursuant to an arbitration clause in the supply contract. Id. The supplier also filed claims against Thomson, arguing that Thomson had purchased the subsidiary in order to eliminate the subsidiary as a competitor, and that *611 the elimination of Thomson's competitor had damaged the supplier's business. Id. When the supply contract was executed, Thomson had no relation to the corporation that ultimately became its subsidiary, or to the supply agreement itself. Id. Thus, the United States Court of Appeals for the Second Circuit held that the supplier, a signatory party, could not invoke the estoppel rule to retroactively bind Thomson, a nonsignatory party, to arbitrate the supplier's claims against it. The Second Circuit based its conclusion on two factors: (1) the fact that Thomson was not a direct beneficiary of the supply contract; and (2) the fact that the supplier's claim against Thomsonpredatory purchase of a competitorwas not integrally related to the supply contract that contained the arbitration clause. Id. at 779-80.
Generally, of course, the estoppel rule is invoked by a nonsignatory party to require a signatory party to arbitrate claims arising from the contract signed by the signatory party. See, e.g., McBro, supra.
Unlike the nonsignatory in Thomson, Larry, the nonsignatory in this case, was extensively involved in the transaction when the purchase documents, including the arbitration agreement, were negotiated. Unlike the subsidiary in Thomson, Larry's daughter Joana executed the purchase documents, including the arbitration agreement, on behalf of her father and herself in a transaction that conferred direct benefits on both of them. In addition to the gratuitous benefit gained by providing his daughter with an automobile, Larry directly received benefits from the buyer's order signed by Joana in that the automobile served as collateral to secure repayment of the loan that he made to purchase the car. Because Larry directly benefited from the buyer's order containing the arbitration clause signed by Joana, Thomson would hold that Larry is estopped from avoiding arbitration. See Thomson, 64 F.3d at 779 ("Had Thomson directly [benefited] from the [contract containing the arbitration clause signed by its subsidiary] ... it would be estopped from avoiding arbitration.") (Emphasis added.) Moreover, Larry's claims are integrally related to the purchase documents, including the arbitration agreement. See Thomson, id. at 779-80. Thus, unlike the signatory seeking arbitration in the Thomson case, the signatory seeking arbitration in this case (Tom Williams) may properly invoke the estoppel rule to compel the nonsignatory (Larry) to arbitrate his claims. Accordingly, Thomson, properly analyzed, does not support the Court's rationale in this case or in the Dickinson case, where the nonsignatory wife clearly benefited from the purchase of the automobile.
I do not believe that a buyer such as Larry can have it both ways. That is, he cannot argue that he has the capacity to sue, on the ground that he was misled into entering a contract to purchase the automobile, and then disavow an arbitration clause in a document that lists him as a purchaser. Either he was a purchaser of the automobile or he was not. Larry should not be allowed to claim on the one hand that he is a purchaser and then, on the other, not be bound by the arbitration clause in the contract that evidences that fact. See A.L. Williams & Associates, 697 F.Supp. at 494.
Based on the foregoing, I consider it obvious that the Court should hold Larry bound by the arbitration clause contained in the buyer's order that gives him the capacity to sue.
HOOPER, C.J., and SEE, J., concur.
NOTES
[1] Ex parte Dickinson, 711 So.2d 984, 989 (Ala. 1998), following Thomson-CSF, S.A. v. American Arbitration Ass'n, 64 F.3d 773 (2d Cir.1995). From the Dickinson opinion, it does not appear that the nonsignatory in that case affirmatively disavowed any benefit from the agreement containing the arbitration clause. Assuming that to be the case, I believe that if the nonsignatory, during the judicial proceedings on remand, invokes any provision of the agreement containing the arbitration clause, her rights would then become subject to arbitration if the defendant then renewed its demand.