815 So.2d 540 (2001)
CREDIT SALES, INC., et al.
v.
Lizzie CRIMM.[1]
1000296.
Supreme Court of Alabama.
September 14, 2001.
John Martin Galese and Jeffrey L. Ingram of Galese & Ingram, P.C., Birmingham, for appellants Credit Sales, Inc., and Credit Finance, Inc.
Frank R. Farish and John P. Graves, Birmingham, for appellee.
SEE, Justice.

I.
Lizzie Crimm and James Whitehead sued Credit Sales, Inc., and Credit Finance, Inc., stating various causes of action arising from Crimm and Whitehead's purchase of an automobile. Pursuant to an arbitration provision in the "Buyer's Order" signed by Whitehead, Credit Sales and Credit Finance moved to compel arbitration; although the trial court granted *541 the motion as to Whitehead's claims, it denied the motion as to Crimm's claims because Crimm was not a signatory to the Buyer's Order. The defendants appeal from the order denying arbitration as to Crimm's claims. We reverse and remand.
On June 30, 1998, James Whitehead and Lizzie Crimm entered a contract to purchase a 1992 Chevrolet Lumina automobile from Credit Sales. Pursuant to that agreement, both Whitehead and Crimm signed a "Retail Installment Contract and Security Agreement" (RICSA); that document does not contain an arbitration clause and does not refer to any other document that purports to contain an arbitration provision.
Whitehead, but not Crimm, also signed a "Buyer's Order," which states, in pertinent part:
"This contract consists of the following documents and no others: the window form for the vehicle (if applicable), this retail buyers order, the Limited Warranty for Used Vehicle Car Sales (if applicable), and the retail sales contract and security agreement. These documents contain all terms of sale and the entire agreement between Seller and Buyer regarding this transaction. Buyer acknowledges that verbal promises by salesmen are not valid and any promises or undertakings not specified in writing are hereby expressly waived by the Buyer. No modification of this Buyer's Order shall be valid unless in writing and signed by Seller."
(C.R. at 33.)
The following arbitration provision appears on the front side of the Buyer's Order:
"DISPUTE RESOLUTION AGREEMENT

"BUYER HEREBY ACKNOWLEDGES AND AGREES THAT ALL DISPUTES AND CONTROVERSIES OF EVERY KIND AND NATURE BETWEEN BUYER AND J.D. BYRIDER SALES,[2] ARISING OUT OF OR IN CONNECTION WITH THE PURCHASE OF THIS VEHICLE WILL BE RESOLVED BY ARBITRATION IN ACCORDANCE WITH THE PROCEDURE SET FORTH ON THE REVERSE SIDE OF THIS BUYER'S ORDER."
(C.R. at 33.) (Emphasis in original.) The reverse side of the agreement reads in pertinent part:
"DISPUTE RESOLUTION PROCESS
"All disputes and controversies of every kind and nature between the parties hereto arising out of or in connection with this contract, its subject matter or its negotiation, as to the existence, construction, validity, interpretation or meaning, performance, non-performance, enforcement, operation, breach of contract, breach of warranty, continuance or termination thereof or any claim alleging fraud in fact, fraud in the inducement, deceit or suppression of any material fact shall be submitted to binding arbitration pursuant to the provisions of the Federal Arbitration Act and according to the commercial rules of the American Arbitration Association then in effect in Birmingham, Alabama. Such arbitration proceedings may be initiated by either party by notice in writing to the other and to the American Arbitration Association. Each party shall bear his own arbitration costs and *542 expenses, except to the extent provided on the reverse side hereof.
". . . .
"The parties stipulate that the provisions hereof shall be a complete defense to any suit, action or proceeding instituted in any federal, state, or local court or before any administrative tribunal with respect to any controversy or dispute arising hereunder."
(C.R. at 69.) Immediately above Whitehead's signature at the bottom of the Buyer's Order is the statement: "CAUTION: IT IS IMPORTANT THAT YOU READ THIS BUYER'S ORDER THOROUGHLY BEFORE YOU SIGN IT." (C.R. at 33.) A Credit Sales representative also signed the Buyer's Order.
Finally, Whitehead, but not Crimm, signed a document entitled "Condition for Return of Down Payment," which reads, in pertinent part:
"THE FOLLOWING TERMS AND CONDITIONS WILL GOVERN AND DETERMINE WHEN, IF AT ALL; AND HOW MUCH, IF ANY, DOWN PAYMENT MONEYS WILL BE REFUNDED.
". . . .
"2. The amount of refund will not exceed $900.
"3. The customer agrees that if ANY payment during the term of the loan is past due, the customer will no longer be eligible to receive a refund of the down payment....
"4. In order to qualify, the account must remain with CNAC for at least 75% of the contract term. Additionally, the account must be paid in full before any refund will be issued and applies to original contract term.
"5. It shall be the responsibility of the customer to notify J.D. Byrider within 30 days of loan payoff that they wish to receive a refund. J.D. Byrider will not be responsible for notifying the customer of their eligibility for a refund.
". . . .
"I/We do hereby agree to and understand the aforementioned terms and conditions. I also agree that failure to meet one or more of the qualifying criteria shall result in forfeiture of any and all down payment moneys."
(C.R. at 56.) (Emphasis in original.)
In the RICSA, which both Whitehead and Crimm signed, Credit Sales assigned its interest in the contract between it, Whitehead, and Crimm to Credit Finance. The RICSA states:
"Seller sells and assigns this Retail Installment Contract and Security Agreement (Contract) to the Assignee, its successors and assigns, including all its rights, title and interest in this Contract, and any guarantee executed in connection with this Contract. Seller gives Assignee full power, either in its own name, or in Seller's name, to take all legal or other actions which Seller could have taken under this Contract."
Whitehead and Crimm contend that in April 2000 they made the final payment on the Lumina and that, pursuant to the provisions of the "Condition for Return of Down Payment" document, they demanded the return of the $900 "down payment." According to Whitehead and Crimm, Credit Sales and Credit Finance refused to return the down payment.
On May 18, 2000, Whitehead and Crimm sued Credit Sales[3] and Credit Finance.[4] *543 On July 10, 2000, Credit Sales and Credit Finance moved the trial court to dismiss or stay the action and to require Whitehead and Crimm to submit their claims to binding arbitration. In support of their motion, Credit Sales and Credit Finance submitted copies of the Buyer's Order, the RICSA, and an affidavit executed by Dave Martin.[5] On August 8, 2000, Credit Sales and Credit Finance filed a supplemental affidavit from Dave Martin and a copy of the document styled "Conditions for Return of Down Payment."
On September 15, 2000, Whitehead and Crimm filed a supplemental brief and copies of the RICSA and the document styled "Conditions for Return of Down Payment." On September 26, 2000, Credit Sales and *544 Credit Finance filed, as a supplement to their motion to compel arbitration, a copy of the reverse side of the "Buyer's Order."
On September 27, 2000, the trial court denied the motion to compel arbitration of Crimm's claims, but granted the motion as to Whitehead's claims. Credit Sales and Credit Finance appeal that portion of the trial court's order denying their motion as to Crimm's claims.[6]

II.
"A direct appeal is the proper procedure by which to seek review of a trial court's order denying a motion to compel arbitration." Tefco Fin. Co. v. Green, 793 So.2d 755, 758 (Ala.2001) (citing Homes of Legend, Inc. v. McCollough, 776 So.2d 741 (Ala.2000)). (See Rule 4(d), Ala. R.App. P., to be effective October 1, 2001, and the Court Comment to the amendment adopting Rule 4(d)"[a]n order granting or denying a motion to compel arbitration is appealable as a matter of right" (emphasis added).) We review de novo a trial court's denial of a motion to compel arbitration. Id. at 758.
The Federal Arbitration Act (FAA) provides:
"A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."
9 U.S.C. § 2; see Tefco Fin. Co., 793 So.2d at 758 (quoting this provision). However, "the duty to arbitrate is a contractual obligation and ... a party cannot be required to arbitrate any dispute that he or she has not agreed to submit to arbitration." Georgia Power Co. v. Partin, 727 So.2d 2, 5 (Ala.1998) (citing AT & T Techs., Inc. v. Communications Workers of America, 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986), and A.G. Edwards & Sons, Inc. v. Clark, 558 So.2d 358 (Ala.1990)).
Whether one has agreed to arbitrate her claims is determined according to ordinary principles of state statutory and common law governing the formation of contracts. Ex parte Stamey, 776 So.2d 85, 88 (Ala.2000). Assent to arbitration is typically "manifested through a party's signature on the contract containing an arbitration provision," Stamey, 776 So.2d at 89; however, this Court has recognized exceptions to this general rule when a thirdparty beneficiary to a contract containing an arbitration provision seeks the benefits of the contract while seeking to avoid the arbitration clause. Stamey, 776 So.2d at 92; see Ex parte Dyess, 709 So.2d 447, 450 (Ala.1998); Ex parte Warren, 718 So.2d 45, 47 n. 4 (Ala.1998). The critical question presented in this appeal, then, is whether Crimm, who did not sign the Buyer's Order containing the arbitration agreement, is nevertheless bound by the terms of that agreement.

III.
Credit Sales and Credit Finance argue that, although Crimm did not sign the arbitration agreement, the nature of her claims nevertheless requires that she arbitrate them. Specifically, Credit Sales and Credit Finance assert that Crimm's claims arise from their alleged failure to return the $900 down payment. They note that Crimm did not sign any documents entitling her to a return of that down *545 payment; instead, only Whitehead signed the "Conditions for Return of Down Payment." Accordingly, they reason, because Crimm can be entitled to the return of the down payment only under the "Conditions for Return of Down Payment" document that was signed by Whitehead, she, like Whitehead, must arbitrate her claims.
In support of their argument that Crimm must submit her claims to arbitration, the defendants rely on Infiniti of Mobile, Inc. v. Office, 727 So.2d 42 (Ala. 1999). In that case, English Office purchased from Infiniti an automobile for his wife. Office, 727 So.2d at 44. Office executed a "New Vehicle Retail Buyer's Order," which contained an arbitration provision, which Office's wife, Mildred, did not sign. In fact, she did not sign any of the documents relating to the purchase transaction. Id. When both English and Mildred sued Infiniti, alleging fraud and breach-of-warranty, Infiniti moved to compel arbitration pursuant to the arbitration provision of the New Vehicle Retail Buyer's Order. Id. at 46. The trial court denied Infiniti's motion, concluding, with respect to Mildred's claims, that because she did not sign the New Vehicle Retail Buyer's Order she had not agreed to arbitrate her claims. On appeal, a plurality of this Court concluded that her claims were subject to arbitration even though she had not signed the document that contained the arbitration provision, or any other documents relating to the sales transaction. Id. at 48. The plurality reasoned that Mildred conceded that she was a thirdparty beneficiary of the contract between her husband and Infiniti and, as such, was required to arbitrate her claims:
"Under these circumstances, Ms. Office is in the position of basing her fraud and breach-of-warranty claims on the contract executed between her husband and Infiniti, while at the same time seeking arbitrarily to avoid the operation of a material provision in that contract solely on the basis that that provision requires the parties to the contract to arbitrate her claims. This she cannot do."
727 So.2d at 48 (citations omitted.) Under Office, the defendants assert, Crimm must arbitrate her claim for a return of the down payment, because, they say, she is a third-party beneficiary of the contract between Whitehead and the defendants. We agree.
In this case, Whitehead's contract with the defendants was composed of several documents executed contemporaneously. When Whitehead purchased the vehicle, he signed the RICSA and the Buyer's Order, which provided that the contract between the parties included the Buyer's Order, the Limited Warranty for Used Vehicle Car Sales, and the RICSA. The Buyer's Order also states that the contract can be modified if the modification is "in writing and signed by the Seller." The "Conditions for Return of Down Payment" was such a modification, because it is in writing and was signed by the seller. Therefore, the Retail Buyer's Order, the RICSA, and the "Conditions for Return of Down Payment" constituted Whitehead's contract with the defendants. See American Gen. Fin., Inc. v. Morton, 812 So.2d 282, 284 (Ala.2001); Reynolds & Reynolds Co. v. King Automobiles, Inc., 689 So.2d 1 (Ala.1996).
Crimm signed the RICSA, which, standing alone, required the defendants to convey the car to Whitehead and Crimm. The RICSA also required Whitehead and Crimm to make certain payments for the vehicle, including a $900 cash down payment. It did not require the return of the down payment, under any set of conditions. Thus, Crimm's execution of the RICSA does not entitle her to a return of the $900 down payment.
*546 Because Crimm's contract with the defendants makes no provision for a return of the down payment, her claims in this lawsuit can be based only upon the contract between Whitehead and the defendants. Therefore, her situation is not meaningfully different from the situation in Office, discussed above. Like Mrs. Office, Crimm bases her claims on another party's contract with the defendants, while at the same time seeking to avoid the operation of the arbitration provision of that contract. See Office, 727 So.2d at 48. This she cannot do; she cannot pick and choose which contract provisions she wishes to have benefit her and reject those she does not wish to have bind her; instead, she must accept or reject the entire contract. Office, 727 So.2d at 48; see also Ex parte Dyess, 709 So.2d 447 (Ala.1997) (stating, in a plurality decision, that as a general rule a person cannot merely pick and choose among applicable contract provisions); Ex parte Payne, 741 So.2d 398, 404 (Ala.1999) (same); Delta Constr. Corp. v. Gooden, 714 So.2d 975, 981 (Ala.1998) ("If Gooden wants to recover compensation under the contract, he may certainly seek to do so; however, he has no choice but to pursue his claim under the terms of that contractthrough arbitration rather than through litigation.").
Crimm argues that this case is controlled by Ex parte Dickinson, 711 So.2d 984 (Ala.1998), and Tom Williams Motors, Inc. v. Thompson, 726 So.2d 607 (Ala. 1998). In Dickinson, David and Sandra Dickinson signed a "Retail Installment Contract" for the purchase of a 1996 Nissan Sentra automobile. 711 So.2d at 985-86. Only David signed the Retail Buyer's Order; that document contained an arbitration clause. Id. However, Sandra witnessed the signing and did not object to the terms of the contract, in which she was listed as a "co-buyer." Id. at 990 (Maddox, J., dissenting). When the Dickinsons sued, alleging fraud, breach of contract, conversion, and "wrongful repossession," the defendants moved to compel arbitration; the trial court granted the defendants' motion. Dickinson, 711 So.2d at 987. On appeal, a plurality of this Court concluded that Sandra's claims were not subject to arbitration, because she was not a signatory to the contract containing the arbitration clause and, thus, never agreed to arbitration. Id. at 989 (discussing Thomson-CSF, S.A. v. American Arbitration Ass'n, 64 F.3d 773 (2d Cir.1995)).
Similarly, in Tom Williams Motors v. Thompson, supra, this Court affirmed a trial court's denial of a signatory's motion to compel arbitration of a claim by a non-signatory. Larry Thompson and his daughter Joana Thompson sued Tom Williams Motors, alleging fraudulent misrepresentation, suppression, deceit, and fraudulent deceit. Id. at 608 (Maddox, J., dissenting). Tom Williams moved to compel arbitration. Id. The trial court did compel arbitration of Joana's claims, but refused to compel arbitration of Larry's claims because Larry had not signed the buyer's order containing the arbitration clause. Id.
Crimm's reliance on Dickinson and Thompson, supra, is misplaced. In Dickinson, the documents Sandra Dickinson signed contained no arbitration provisions and, thus, this Court would not compel her to arbitrate her claims because she had not agreed to arbitration in the first place. 711 So.2d at 989. However, unlike Crimm, Sandra Dickinson could sue on the basis of her contract with the defendant dealership. That is, her claims for relief were not dependent upon her husband's contract with the defendant, but upon her own. Id.; see Office, 727 So.2d at 48 (distinguishing Dickinson). Similarly, in Thompson, the father sued as a purchaser of the vehicle; he had not agreed to the *547 arbitration provision contained in the Buyer's Order. Thompson, 726 So.2d at 608 (Lyons, J., concurring in the result); see Office, 727 So.2d at 48 (distinguishing Thompson). Unlike Crimm, the non-signatory father was not a third-party beneficiary attempting to pick and choose among the provisions in the buyer's order executed between his daughter and the dealer. Thompson, 726 So.2d at 608 (Lyons, J., concurring in the result); see Office, 727 So.2d at 48 (distinguishing Thompson). Instead, his claims alleging fraud in the inducement were independent of the buyer's order that contained the arbitration clause. Thompson, 726 So.2d at 608 (Lyons, J., concurring in the result).

IV.
We conclude that the trial court clearly erred in denying Credit Sales and Credit Finance's motions to compel the arbitration of Crimm's claims. Office, 727 So.2d at 48. Therefore, to the extent the trial court's order denied arbitration of Crimm's claims, we reverse that order, and we remand the case for proceedings consistent with this opinion.
REVERSED AND REMANDED.
HOUSTON, LYONS, BROWN, HARWOOD, WOODALL, and STUART, JJ., concur.
JOHNSTONE, J., concurs specially.
MOORE, C.J., dissents.
JOHNSTONE, Justice (concurring specially).
I concur. I write only to address an additional aspect of Crimm's argument.
On the one hand, Crimm argues that she is not bound by the arbitration agreement in the Buyer's Order because she did not sign it. On the other hand, she argues that, even though she did not sign the Conditions for Return of Down Payment document ("CRDP"), she can enforce it as a direct party to it and direct beneficiary of it (as distinguished from a third-party beneficiary) because she accepted it and acted upon it by signing and performing the Retail Installment Contract and Security Agreement ("RICSA"). Crimm argues that she is therefore not a mere third-party beneficiary of the CRDP dependent upon Whitehead's contractual rights and bound by Whitehead's contractual obligation to arbitrate.
Crimm cites plenty of good law to the effect that a person who does not sign a contract may nonetheless manifest the mutuality and assent necessary to make the contract and to become a party to it by accepting it and acting upon its terms and may then enforce it against the other party or parties to it. The fatal flaw in Crimm's argument is that, to the extent that her signing and performing the RICSA constituted an acceptance of the CRDP, which she seeks to enforce, her signing and performing the RICSA equally constituted an acceptance of the Buyer's Order, which she seeks to avoid. We need not decide whether or not her signing and performing the RICSA did constitute such an acceptance. We need only observe that the effect of her signing and performing the RICSA would have been the same upon the Buyer's Order as upon the CRDP, for all of the RICSA performance required by the CRDP is equally required by the Buyer's Order. Therefore, Crimm is either a direct obligor on the Buyer's Order containing the arbitration agreement she seeks to avoid or she is a mere third-party beneficiary of the CRDP she seeks to enforce.
NOTES
[1] The complaint spells this party's name "Lizzie Crimm." Other documents spell her name "Lizzie Crim," "Lizzie C. Whitehead," or "Lizzie Crim Whitehead."
[2] At the time of the transaction, Credit Sales, Inc., did business under the trade name "J.D. Byrider Sales."
[3] Credit Sales answered the complaint, under the name "Credit Sales," and the name included an indication that Credit Sales did business under the names "J.D. Byrider Sales" and "Cars Alabama."
[4] Their complaint also named J.D. Byrider Sales, Cars Alabama, and D.A. Mack as defendants. J.D. Byrider Sales and Cars Alabama are apparently trade names under which Credit Sales has done business. It is unclear from the record whether D.A. Mack is in any way associated with Credit Sales or Credit Finance. The case action summary sheet provides information only as to J.D. Byrider Sales, Cars Alabama, Credit Sales, and Credit Finance; it is otherwise silent as to D.A. Mack and does not indicate whether D.A. Mack even remains a party to this action. The complaint alleged, in pertinent part:

"4. Plaintiffs aver and allege that on or about April in the year 2000, subsequent to the last payments being made on said automobile, and upon the completion of the said contract, that they made demand upon the defendants at that said time for the return of the aforesaid down payment and the defendants refused without cause or justification to return the said down payment which has resulted in the wrongful conversion of funds of the plaintiffs; ...
". . . .
"5. Plaintiffs aver and allege that the defendants made certain material representations to them regarding the financing arrangements relating to the purchase of the subject automobile that the plaintiffs believed to be true that were relevant and material to the formation of the contract and ... which the plaintiffs acted upon to their detriment; plaintiffs further aver and allege that the defendants knew or in the exercise of due and reasonable care should have known that said representations were false and fraudulently made....
". . . .
"6. Plaintiffs aver and allege that on the aforesaid occasion made the basis of this suit, the [defendants'] actions were negligent, reckless and wanton, in the drawing of the said contract between the parties, their investigation into the claim of the plaintiffs and the refusal to return the plaintiffs' down payment after demand....
". . . .
"7. Plaintiffs aver and allege that the actions of the defendants were outrageous and done with a total disregard of their ramifications and outcome....
". . . .
"8. Plaintiffs aver and allege that the defendants... failed to initiate sufficient institutional controls over the manner in which the defendants' employees, associates, executives and directors conducted themselves...."
(C.R. at 3-5.)
[5] Martin's affidavit stated, in pertinent part:

"I am familiar with the transaction between the Defendants and the Plaintiffs, James Whitehead and Lizzie [Crimm]. I am familiar with the books and records of the Credit Sales, Inc. and Credit Finance, Inc. concerning the transaction at issue.
"According to these books and records of the dealership, on June 30, 1998, Plaintiffs entered into a written contract to purchase a 1992 Chevrolet Lumina....
"As part of the agreement between Credit Sales, Inc. and Plaintiffs, the parties agreed to resolve all disputes arising out of the contract by binding arbitration. In addition, the parties to this contract agreed to resolve all questions about the existence, construction and validity of the arbitration agreement therein contained, by arbitration. These Plaintiffs also signed a Retail Installment Contract and Security Agreement which is attached hereto.... That retail installment contract was then assigned by Credit Sales, Inc. to Credit Finance, Inc."
(C.R. at 31-32.)
[6] Because Credit Sales and Credit Finance appeal the trial court's judgment only as it relates to Crimm's claims, we pretermit discussion of the propriety of the trial court's order with regard to Whitehead's claims.