873 So.2d 244 (2003)
Lillon S. HILL
v.
The NATIONAL AUCTION GROUP, INC.
2020498.
Court of Civil Appeals of Alabama.
August 22, 2003.
*245 Joshua B. Sullivan of Henslee, Robertson, Strawn & Knowles, L.L.C., Gadsden, for appellant.
E. Britton Monroe and Preston B. Davis of Lloyd, Gray & Whitehead, P.C., Birmingham, for appellee.
THOMPSON, Judge.
This is an appeal from an order granting a motion to compel arbitration.
The record indicates that John Agricola owned certain parcels of real property in Etowah County. Agricola entered into a contract (hereinafter referred to as "the listing agreement") with The National Auction Group, Inc. ("NAG"), which provided that NAG would include Agricola's real property in a real-estate auction conducted by NAG. The listing agreement, which is dated July 10, 2000, and is signed by Agricola and representatives of NAG, sets forth the terms of the agreement between Agricola and NAG. The listing agreement also contains an arbitration provision.
NAG advertised the auction that would include the sale of Agricola's real property. It appears from the record on appeal that the auction was conducted on September 6, 2000. It is undisputed that Lillon S. Hill was the successful bidder for one parcel ("the parcel") of Agricola's property that was sold at the auction conducted by NAG. On September 6, 2000, Hill and Agricola entered into a "real estate purchase and sale agreement" (hereinafter "the real-estate contract"), which contained the terms of Hill's purchase of the parcel from Agricola. The real-estate contract between Hill and Agricola did not contain an arbitration agreement.
On February 12, 2002, Hill sued Agricola and NAG. In his complaint, Hill alleged that "the defendants" had failed to convey the parcel to him pursuant to the terms of the real-estate contract, and he sought *246 damages for an alleged breach of contract. Hill also sought damages for an alleged fraudulent misrepresentation, claiming that "the defendants" misrepresented to him that the parcel was for sale and that it would actually be sold to the successful bidder at the September 6, 2000, auction. In addition, Hill sought specific performance of the real-estate contract.
NAG answered Hill's complaint and denied liability. Agricola also answered and denied liability; in his answer, Agricola also asserted a cross-claim against NAG. On June 21, 2002, NAG sought to compel arbitration of Hill's claims against it and to stay the proceedings in the trial court. Hill opposed that motion. NAG also later moved to compel arbitration of the cross-claim Agricola asserted against it; it does not appear that Agricola opposed that motion.
The transcript of the oral arguments for the November 15, 2002, hearing in this matter indicates that the attorney for NAG referenced an amended complaint that Hill had filed shortly after NAG filed its motion to compel arbitration; NAG's attorney stated that, in that amended complaint, Hill had alleged that he was not asserting a breach-of-contract claim against NAG but that he was only seeking damages from NAG for an alleged fraudulent misrepresentation. Also, in a footnote in his opposition to NAG's motion to compel arbitration, Hill himself referenced that amended complaint. That amended complaint is not a part of the record on appeal. However, in their briefs submitted to this court, both parties address only the fraudulent-misrepresentation claim asserted by Hill against NAG. Therefore, in this opinion, we address the arguments of the parties with regard to only that one claim.
The trial court, on November 25, 2002, entered an order granting NAG's motion seeking to compel arbitration of Hill's claim against it. Hill filed a petition for a writ of mandamus in our supreme court; that court elected to treat the petition as a timely filed appeal. See Rule 4(d), Ala. R.App. P. ("An order granting or denying a motion to compel arbitration is appealable as a matter of right."). The supreme court later transferred the appeal to this court after it concluded that this court had jurisdiction of the appeal.
An appellate court reviews an order granting or denying arbitration de novo, or without a presumption of correctness attaching to the trial court's decision. Lewis v. Oakley, 847 So.2d 307 (Ala.2002). "Therefore, this Court must determine `whether the trial judge erred on a factual or legal issue to the substantial prejudice of the party seeking review.' Ex parte Roberson, 749 So.2d 441, 446 (Ala.1999)." Lewis v. Oakley, 847 So.2d at 318. The party seeking to compel arbitration has the initial burden of establishing the existence of a contract containing a written arbitration provision, and that party must also demonstrate that the transaction that forms the contract between the parties affects interstate commerce. Transouth Fin. Corp. v. Bell, 739 So.2d 1110 (Ala. 1999). In this case, the question whether the transaction affects interstate commerce is not before this court; the parties dispute only the issue pertaining to whether the arbitration provision contained in the listing agreement encompasses Hill's claim against NAG.
On appeal, Hill argues that because he did not sign the listing agreement that contained the arbitration provision, he cannot be required to arbitrate his claim against NAG.
"It is black-letter law that arbitration agreements must be enforced according to general standards of contract law. *247 See Quality Truck & Auto Sales, Inc. v. Yassine, 730 So.2d 1164, 1167-68 (Ala. 1999). Accordingly, `"a party cannot be required to submit to arbitration any dispute he has not agreed to submit."' Old Republic Ins. Co. v. Lanier, 644 So.2d 1258, 1260 (Ala.1994) (quoting A.G. Edwards & Sons, Inc. v. Clark, 558 So.2d 358, 362 (Ala.1990)). It is the general rule that a nonsignatory to an arbitration agreement cannot be forced to arbitrate her claims. See Ex parte Stripling, 694 So.2d 1281 (Ala.1997); Thomson-CSF, S.A. v. American Arbitration Ass'n, 64 F.3d 773 (2d Cir. 1995)."
Cook's Pest Control, Inc. v. Boykin, 807 So.2d 524, 526 (Ala.2001).
Our supreme court has recognized two exceptions to the general rule that a party who has not signed a document containing an arbitration provision will not be required to submit to arbitration to which he or she did not agree. Under those two exceptions, a nonsignatory to a contract may be required to submit to arbitration where he or she is a third-party beneficiary of the contract containing the arbitration provision, or where the nonsignatory's claims are intertwined with the contract containing the arbitration provision; those exceptions are known as the third-party-beneficiary exception and the "intertwining-claims" exception, respectively. See AmSouth Bank v. Dees, 847 So.2d 923 (Ala.2002); SouthTrust Bank v. Ford, 835 So.2d 990 (Ala.2002); Conseco Fin. Corp. v. Sharman, 828 So.2d 890 (Ala.2001); Cook's Pest Control, Inc. v. Boykin, supra; Ex parte Stamey, 776 So.2d 85 (Ala.2000); Ex parte Dyess, 709 So.2d 447 (Ala.1997). In addition, our supreme court has also noted that where the scope of the arbitration provision is limited to encompass only the parties who signed that agreement, a nonsignatory cannot be compelled to arbitrate pursuant to that arbitration provision. Cook's Pest Control, Inc. v. Boykin, 807 So.2d at 527. We first address Hill's argument pertaining to the scope of the arbitration provision at issue; we then address the third-party-beneficiary and intertwining-claims exceptions.
Hill maintains that he cannot be required to arbitrate his claim against NAG pursuant to the arbitration provision contained in the listing agreement because he is not a signatory to the listing agreement and because the terms of the arbitration provision contained in the listing agreement limit that provision to apply only to the parties who signed that agreement. In support of this portion of his argument, Hill cites Cook's Pest Control, Inc. v. Boykin, supra.
In Cook's Pest Control, our supreme court referenced its earlier holding in Southern Energy Homes, Inc. v. Gary, 774 So.2d 521 (Ala.2000), in which that court held that a nonsignatory could not compel arbitration of a claim asserted by a signatory to an arbitration provision because the provision at issue was limited, by its express terms, to apply only to the parties who signed the agreement providing for arbitration. In Cook's Pest Control, 807 So.2d at 527, the court expanded the holding of Southern Energy Homes to prevent a signatory to an arbitration agreement from compelling a nonsignatory to arbitrate where the arbitration provision was limited to apply only to the parties to the agreement. Our supreme court found, in addition to its determination that the claims did not fall under the third-party-beneficiary exception or the intertwining-claims exception, that the "narrow scope" of the arbitration agreement at issue in that case provided an "independent basis" for affirming the trial court's denial of the motion to compel arbitration. Cook's Pest Control, Inc. v. Boykin, 807 So.2d at 527.
*248 The arbitration provision contained in the listing agreement between Agricola and NAG provides, in pertinent part:
"1. Agreement. Any dispute(s) pertaining to legal controversies and other matters and questions arising out of or relating to the auction made the subject of this agreement by the National Auction Group, Inc., an Alabama corporation, hereinafter referred to as `NAG,' and the Seller, including but not limited to, the terms of this agreement, representation, promises, undertakings or covenants made relating to the auction agreement, services provided under the auction agreement, and the validity and construction of arbitration in accordance with the commercial arbitration rules of America Arbitration Association [sic]. The parties agree to be bound by the result as their SOLE remedy.

"2. SCOPE. Arbitration shall apply to ANY dispute between the parties concerning questions of law or fact or both arising out of or relating to this agreement, its performance, or its alleged breach, which is not disposed of by agreement of the parties within Thirty (30) days."
(Emphasis added.)
We construe the language in the arbitration provision contained in the listing agreement to apply only to the parties to that agreement. Therefore, we hold that NAG, a signatory to the listing agreement, could not compel Hill, a nonsignatory, to arbitrate his claim pursuant to the arbitration provision contained in the listing agreement because that arbitration provision was specifically limited, by its own terms, to the parties signing the listing agreement. See Cook's Pest Control, Inc. v. Boykin, supra; SouthTrust Bank v. Ford, 835 So.2d 990, 995 (Ala.2002).
Hill also maintains that he is not subject to the third-party-beneficiary exception to the rule that a party will not be required to arbitrate pursuant to a provision in a contract to which the party is a nonsignatory. Our supreme court has stated that a party who claims to be a third-party beneficiary of a contract must demonstrate that the parties to the contract intended "`to bestow a direct, as opposed to an incidental, benefit upon the third party.'" Ex parte Stamey, 776 So.2d 85, 92 (Ala.2000) (quoting Weathers Auto Glass, Inc. v. Alfa Mut. Ins. Co., 619 So.2d 1328, 1329 (Ala.1993)) (holding in part that the contract containing an arbitration provision did not demonstrate that the parties to that contract intended to bestow a direct benefit upon the alleged third party). See also Cook's Pest Control, Inc. v. Boykin, 807 So.2d at 526. Hill contends that he is not a third-party beneficiary of the listing agreement between Agricola and NAG and that nothing in the listing agreement indicates that he was intended to benefit from that agreement.
In this case, Hill is not the party claiming third-party-beneficiary status; NAG asserts that Hill is a third-party beneficiary of its listing agreement with Agricola. However, the record and the briefs on appeal do not indicate under what theory NAG asserts that it and Agricola, in executing the listing agreement, intended to "bestow a direct ... benefit" on Hill. Ex parte Stamey, 776 So.2d at 92. Rather, in arguing that Hill is a third-party beneficiary of the listing agreement, NAG argues that Hill, in asserting his fraudulent-misrepresentation claim against NAG, must rely on the terms of the listing agreement in order to establish the reasonable-reliance element of that claim. Thus, NAG asserts that Hill is attempting to take advantage of some parts of the listing agreement while attempting to avoid other parts of that agreement. It is well settled that a party may not seek to *249 take advantage of the benefits of a contract while seeking to avoid the burdens of that contract, such as an arbitration agreement. Credit Sales, Inc. v. Crimm, 815 So.2d 540 (Ala.2001); Cook's Pest Control, Inc. v. Boykin, supra; Georgia Power Co. v. Partin, 727 So.2d 2 (Ala.1998); Ex parte Dyess, supra. NAG cites Ex parte Dyess, supra, and Credit Sales, Inc. v. Crimm, supra, as support for its assertion that Hill is a third-party beneficiary of the listing agreement because, it asserts, he is allegedly seeking to use the listing agreement to his benefit in establishing his fraudulent-misrepresentation claim against NAG.
In Ex parte Dyess, supra, Dyess was injured in an automobile accident while test-driving a dealer's automobile. He sought coverage pursuant to an uninsured-motorist insurance policy between the dealer and an insurer; that insurance policy contained an arbitration provision. Our supreme court denied Dyess's petition for a writ of mandamus[1] seeking to vacate the trial court's order compelling arbitration. The court concluded that the uninsured-motorist policy upon which Dyess based his claims was clearly intended to benefit "people in Dyess's situation," and, therefore, that Dyess was a third-party beneficiary of that policy. Ex parte Dyess, 709 So.2d at 452. The court determined that Dyess was attempting to benefit from the provisions of the uninsured-motorist insurance policy while trying to avoid the arbitration provision contained in that policy.
In Credit Sales, Inc. v. Crimm, supra, Crimm and Whitehead each signed certain documents in connection with their purchase of an automobile. In addition, Whitehead, but not Crimm, signed a document that provided for the refund of the down payment on the automobile when the indebtedness on the automobile was fully paid; that document contained an arbitration provision. Crimm and Whitehead sued the defendants when the defendants refused to return the amount they had paid as a down payment on the automobile. The trial court granted the defendants' motion to compel arbitration as to Whitehead, but it denied the motion as to Crimm. In reversing that part of the trial court's judgment pertaining to Crimm, our supreme court agreed with the defendants that Crimm was a third-party beneficiary of the contract that provided for the return of the down payment. Crimm, 815 So.2d at 545. The court explained that Crimm could not assert a claim for the return of the down payment pursuant to the contracts she executed; rather, her claims pertaining to the defendants' failure to refund the down payment could "be based only upon the contract between Whitehead and the defendants." Crimm, 815 So.2d at 546 (emphasis added). The court concluded that Crimm could not base her claims on the contract to which she was not a signatory and also avoid the arbitration provision in that contract because she was not a signatory to the contract. Instead, Crimm "must accept or reject the entire contract." Id.
In both Ex parte Dyess and Crimm, the plaintiffs' claims arose out of and were based entirely on the contracts that contained the arbitration agreements the plaintiffs sought to avoid. In this case, Hill characterizes his claim as being based solely on the real-estate contract between himself and Agricola. Although NAG is correct that one way in which Hill could establish the element of reasonable reliance in his claim against NAG would be to reference the listing agreement, reference *250 to that agreement is not the only way in which Hill could seek to establish all of the elements of his fraudulent-misrepresentation claim against NAG. Thus, we conclude that the facts of Ex parte Dyess and Crimm are distinguishable from the facts of this case.
Our review of the record indicates that Hill is correct that the record contains no evidence that, in entering into the listing agreement, NAG and Agricola intended to bestow a direct benefit upon Hill, see Ex parte Stamey, supra, or that they intended to bestow a direct benefit upon people in Hill's situation, i.e., the ultimate purchaser of the parcel, see Ex parte Dyess, supra. Also, we cannot say that NAG established that Hill was impermissibly seeking to take advantage of the listing agreement while avoiding the arbitration provision contained in that agreement. See Credit Sales, Inc. v. Crimm, supra; Cook's Pest Control, Inc. v. Boykin, supra; Georgia Power Co. v. Partin, supra; Ex parte Dyess, supra. Therefore, we agree with Hill that it has not been demonstrated that he is subject to the third-party-beneficiary exception that would require him, as a nonsignatory to the listing agreement, to arbitrate his claims against NAG pursuant to the arbitration provision contained in the listing agreement.
Hill also maintains that his misrepresentation claim against NAG is not intertwined with the listing agreement so as to bring him under the intertwining-claims exception to the general rule regarding nonsignatories. Our supreme court has explained the intertwining-claims exception by stating that a party may be required to arbitrate, even if the party is a nonsignatory to a contract containing an arbitration provision, "where arbitrable and nonarbitrable claims are so closely related that the party to a controversy subject to arbitration is equitably estopped to deny the arbitrability of the related claim." Conseco Fin. Corp. v. Sharman, 828 So.2d at 893. Thus, parties who have entered into written arbitration agreements may be estopped from avoiding arbitration required under those agreements. See Ex parte Tony's Towing, Inc., 825 So.2d 96, 99 (Ala.2002) (citing the discussion in E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S., 269 F.3d 187 (3d Cir.2001), pertaining to the intertwining-claims exception). However, the doctrine of estoppel, and, therefore, the intertwining-claims exception, apply only to prevent a signatory to a contract containing an arbitration provision from avoiding arbitration. SouthTrust Bank v. Ford, supra; Ex parte Tony's Towing, Inc., supra.
In Ex parte Tony's Towing, Inc., supra, the plaintiff sued five defendants including Tony's Towing, Inc., regarding a dispute over the purchase and installation of her mobile home. The contract between the plaintiff and one of the defendants (not Tony's Towing) contained an arbitration provision, and several defendants moved to compel arbitration. The trial court entered an order compelling all parties to the dispute to arbitrate their claims. Tony's Towing petitioned our supreme court for a writ of mandamus directing the trial court to vacate that part of its judgment requiring it to arbitrate. Our supreme court issued the writ, concluding that the intertwining-claims exception did not apply to prevent Tony's Towing, a nonsignatory to the relevant arbitration provision, from seeking to avoid arbitration. In so holding, the court cited with approval and quoted from a holding by the United States Court of Appeals for the Third Circuit that addressed the reason behind its determination that a signatory to an arbitration agreement could not, under the intertwining-claims exception, require a *251 nonsignatory to arbitrate; that discussion reads as follows:
"This very point was recently addressed in E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S., 269 F.3d 187 (3d Cir.2001), where the United States Court of Appeals for the Third Circuit noted that one of the theories relied upon to obtain arbitration was that `courts have bound a signatory to arbitrate with a non-signatory "at the nonsignatory's insistence because of `the close relationship between the entities involved, as well as the relationship of the alleged wrongs to the nonsignatory's obligations and duties in the contract... and [the fact that] the claims were intimately founded in and intertwined with the underlying contract obligations.'"' 269 F.3d at 199 (quoting Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc., 10 F.3d 753, 757 (11th Cir.1993)) (quoting in turn McBro Planning & Dev. Co. v. Triangle Elec. Constr. Co., 741 F.2d 342, 344 (11th Cir. 1984)). The Third Circuit then held:
"`With reference to the second theory of equitable estoppel, appellants rely on a series of cases in which signatories were held to arbitrate related claims against parent companies who were not signatories to the arbitration clause. In each of these cases, a signatory was bound to arbitrate claims brought by a non-signatory because of the close relationship between the entities involved, as well as the relationship of the alleged wrongs to the non-signatory's obligations and duties in the contract and the fact that the claims were intertwined with the underlying contractual obligations....
"`Appellants recognize that these cases bind a signatory not a non-signatory to arbitration, but argue that this is a distinction without a difference. They are wrong.
"`Indeed, the Second Circuit recently rejected the same "distinction without a difference" argument:
"`"As these cases indicate, the circuits have been willing to estop a signatory from avoiding arbitration with a nonsignatory when the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed. As the district court pointed out, however, `[t]he situation here is inverse: E & S, as signatory, seeks to compel Thomson, a non-signatory.' While E & S suggests that this is a non-distinction, the nature of arbitration makes it important. Arbitration is strictly a matter of contract; if the parties have not agreed to arbitrate, the courts have no authority to mandate that they do so. In the line of cases discussed above, the courts held that the parties were estopped from avoiding arbitration because they had entered into written arbitration agreements, albeit with the affiliates of those parties asserting the arbitration and not the parties themselves. Thomson, however, cannot be estopped from denying the existence of an arbitration clause to which it is a signatory because no such clause exists. At no point did Thomson indicate a willingness to arbitrate with E & S. Therefore, the district court properly determined these estoppel cases to be inapposite and insufficient justification for binding Thomson to an agreement that it never signed."
"`Thomson-CSF, S.A. [v. American Arbitration Ass'n], 64 F.3d [773] at 779 [(2d Cir.1995)] (internal citations omitted).'
*252 "269 F.3d at 201-02 (some emphasis original; some emphasis added [in Ex parte Tony's Towing, Inc.]) (footnotes omitted). Dunbar and the Williams defendants are therefore not in a position to insist that Tony's submit to arbitration based upon the doctrine of intertwining."
Ex parte Tony's Towing, Inc., 825 So.2d at 98-99.
In this case, NAG, a signatory to the listing agreement, is seeking to require Hill, a nonsignatory, to arbitrate his claim against NAG pursuant to the arbitration provision contained in the listing agreement. However, Hill, as a nonsignatory, cannot be estopped under the intertwining-claims exception from seeking to avoid arbitration. See SouthTrust Bank v. Ford, supra; Ex parte Tony's Towing, Inc., supra. Therefore, we must conclude that the intertwining-claims exception does not apply to compel Hill, as a nonsignatory, to arbitrate his claim against NAG, and that that exception was not an appropriate basis under which the trial court could compel Hill to arbitrate his claim against NAG.
We have determined that the foregoing exceptions do not apply to compel Hill to arbitrate his claim against NAG. Therefore, we must conclude that the trial court erred in entering an order compelling Hill, a nonsignatory to the only agreement that contained an arbitration provision, to arbitrate his claim against NAG.
REVERSED AND REMANDED.
YATES, P.J., and CRAWLEY and PITTMAN, JJ., concur.
MURDOCK, J., concurs in the result.
NOTES
[1] Ex parte Dyess was decided before the October 1, 2002, effective date of the amendment to Rule 4(d), Ala. R.App. P., that allows an appeal of an order granting or denying a motion to compel arbitration.